**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PARAMOUNT MEDIA GROUP, INC., | |
| Plaintiff, | Case No. 13-CV-03994 |
| v. | Judge Charles Norgle |
| VILLAGE OF BELLWOOD and IMAGE MEDIA ADVERTISING, INC., | Magistrate Judge Jeffrey Cole |
| Defendants. | |

**DEFENDANT VILLAGE OF BELLWOOD'S ANSWER, AFFIRMATIVE DEFENSES
AND JURY DEMAND TO PARAMOUNT MEDIA GROUP, INC.'S COMPLAINT**

Now Comes, VILLAGE OF BELLWOOD ("BELLWOOD") by and through its attorneys, Rock Fusco & Connelly, LLC, hereby submits its answer and affirmative defenses to Paramount Media Group, Inc.'s Complaint for Constitutional Rights Violations, Civil Rights Violations and Other Claims Seeking Preliminary and Permanent Injunctions and Other Relief. In support thereof, Bellwood states as follows:

<u>NATURE OF ACTION</u>

1.     This is an action for relief based on violations of Paramount Media Group, Inc.'s ("Paramount") constitutional rights under the First and Fourteenth Amendments to the United States Constitution; as well as antitrust claims under the Sherman Act due to the governmental interference with private contractual relationships, unlawful exercise of government authority, and monopolization; and declaratory judgment that the Village of Bellwood ("Bellwood") exceeded its authority to lease property to Image Media Advertising, Inc. ("Image Media").

**ANSWER:**  Bellwood admits only that Plaintiff brings this action for damages alleging deprivation of its constitutional rights and state law claims.  Bellwood denies any remaining allegations.

<u>THE PARTIES</u>

2.      Paramount is an Illinois corporation located in Naperville, Illinois. Paramount purchases and/or leases property, constructs outdoor advertising displays and sells advertisements on its outdoor advertising displays.

**ANSWER:** Upon information and belief, Bellwood admits the allegations contained within Paragraph 2.

3.     Bellwood is an Illinois municipal corporation located in Cook County, Illinois.

**ANSWER:** Bellwood admits the allegations contained in Paragraph 3.

4.     Image Media is an Illinois corporation located in Hinsdale, Illinois. Image Media also purchases and/or leases property, constructs outdoor advertising displays and sells advertisements on its outdoor advertising displays.

**ANSWER:** Upon information and belief, Bellwood admits the allegations contained within Paragraph 4.

<u>JURISDICTION AND VENUE</u>

5.     Paramount's claims in Counts I through V are all based on federal constitutional issues relying on causes of action authorized under the Civil Rights Act, 42 U.S.C. § 1983, or are federal antitrust claims under the Sherman Act, 15 U.S.C. §§ 1 and 2, and authorized under §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and therefore this Court has federal jurisdiction under 28 U.S.C. § 1331. Paramount's claim in Count VI that Bellwood has not complied with the Illinois Municipal Code is based on this Court's supplemental jurisdiction under 28 U.S.C.§ 1367.

**ANSWER:** Bellwood admits the allegations contained in Paragraph 5.

6.     Venue is proper in the Northern District of Illinois as Defendants reside in the Northern District; Paramount does business in the Northern District; the actions complained about occurred in the Northern District; and the likely witnesses necessary for this case generally reside in the Northern District.

**ANSWER:** Bellwood admits the allegations contained in Paragraph 6.

**<u>BACKGROUND FACTS</u>**

**Paramount's Efforts to Construct a Billboard in Bellwood**

7.     The Illinois Highway Advertising Control Act of 1971 ("the Act") regulates "the erection and maintenance of outdoor advertising signs, displays and devices in areas adjacent to the interstate highways and primary highways." 225 ILCS 440/1. Implementation and enforcement of the Act resides with the Illinois Department of Transportation ("IDOT"). 225 ILCS 440-14.01.

**ANSWER:** Bellwood admits that the statutes cited above read as alleged in Paragraph 7.

8. The Act permits outdoor advertising in "business areas." 225 ILCS 440/1, 4.04. With respect to signs along interstate highways, an area is a "business area" if the land is used or zoned for commercial or industrial activities. 225 ILCS 440/3.12; 92 Ill. Admin. Code § 522.20.

**ANSWER:** Bellwood admits that the Act permits outdoor advertising in business areas as defined by the Act and as cited in Paragraph 8. The second sentence of Paragraph 8 is a legal conclusion to which no response is necessary.

9. In order to erect a billboard sign, it is necessary that a billboard operator obtain a permit from IDOT. 225 ILCS 440/8; 92 Ill. Admin. Code § 522.30.

**ANSWER:** The allegations in Paragraph 9 state a legal conclusion to which no response is necessary.

10. Further, pursuant to IDOT's rules and regulations, no billboard sign may be erected along the same side of an interstate highway or expressway within 500 feet of another sign or location where another such sign has been permitted but not yet erected. 92 Ill. Admin. Code § 522.200(d).

**ANSWER:** The allegations in Paragraph 10 state a legal conclusion to which no response is necessary.

11. On or about February 22, 2005, Paramount entered into a Lease Agreement with Villa Park Trust and Savings Bank as Trustee under Trust No. 1531. The Lease Agreement provided that Villa Park Trust and Savings Bank, as Trustee, would lease to Paramount property located at the commonly known address of 1133-35 Bellwood Ave, Bellwood, Illinois ("the Property"), for the purpose of erecting and maintaining a billboard advertising structure. A true and accurate copy of the Lease Agreement is attached hereto, is marked as Exhibit A and is incorporated herein by reference.

**ANSWER:** Bellwood admits that there is a purported lease agreement attached at Exhibit A to the Complaint. Bellwood lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 11.

12. The Property is located along the Interstate 290 expressway.

**ANSWER:** Bellwood admits that the Property as identified by Plaintiff in Paragraph 12 is

near Interstate 290 expressway.

13.    Pursuant to the Bellwood Code of Ordinances, the Property at the time was located in a B1 business zoning district, which is a "business area" as defined by the Act.

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 13.

14.    On May 25, 2011, Paramount, through its President, Dave Quas ("Quas"), submitted to IDOT an Application for Outdoor Advertising Permit Business Area Sign-Interstate Highway, which sought the issuance of a State permit to construct a billboard on the Property. A true and accurate copy of the Application is attached hereto, is marked as Exhibit B and is incorporated herein by reference.

**ANSWER:**   Bellwood admits that Exhibit B purports to be an application as identified in

Paragraph 14.  Bellwood lacks sufficient information or knowledge to form a belief as to the

truth of the remaining allegations contained in Paragraph 14.

15.    On or about July 21, 2011, Paramount received correspondence from IDOT informing Paramount that its application had been approved and that Paramount had been issued a State Outdoor Advertising Permit ("IDOT permit"). The correspondence from IDOT stated that the IDOT permit was valid for three (3) years after the date of issuance. A true and accurate copy of the application is attached hereto, is marked as Exhibit C and is incorporated herein by reference.

**ANSWER:**   Bellwood admits that Exhibit C purports to be a letter from IDOT to Plaintiff.

Bellwood lacks sufficient information or knowledge to form a belief as to the truth of the

remaining allegations contained in Paragraph 15.

**Bellwood's Sign
Ordinances**

16.    Title XV, Chapter 156, § 156.207 of the Bellwood Code of Ordinances stated: "Off-site advertising sign permit. All owners or operators of off-site advertising signs must apply for and obtain an off- site advertising sign permit." A true and accurate copy of Section 156.207 of the Bellwood Code of Ordinances is attached hereto, is marked as Exhibit D and is incorporated herein by reference.

**ANSWER:**   Bellwood admits that Section 156.207 of its Code of Ordinances reads as

identified in Paragraph 16.

17.    On or about February 25, 2009, Bellwood passed Ordinance 9-4 (the "Prior

Ordinance"), which amended Section 156.207 of the Bellwood Code of Ordinances to state: "Erection ban. Except as otherwise provided in § 156.20(G), subsequent to the effective date of this subchapter, no new off-site advertising sign permit will be issued by the Village."

**ANSWER:** Bellwood admits that Section 156.207 of its Code of Ordinances reads as identified in Paragraph 17.

18. On or about March 21, 2012, Bellwood passed Ordinance No. 12-9 (the "Ordinance") again amending Section 156.207. The Ordinance provided that Section 156.07 would be amended to now state: "Village property. An off-site advertising sign permit proposed to be located on Village owned or controlled property may be exempted from the terms of this Chapter subject to any conditions set by the Mayor and Board of Trustees." A true and accurate copy of Ordinance No. 12-9 is attached hereto is marked as Exhibit E and is incorporated herein by reference.

**ANSWER:** Bellwood admits that Section 156.207 of its Code of Ordinances reads as identified in Paragraph 17.

**Bellwood's and Image Media's
Agreement**

19. As of October 17, 2012, Bellwood was the owner of vacant property located at the commonly known address of 1156 Bellwood Ave., Bellwood, Illinois (the "Bellwood Property"), which formerly was the location of a gas station.

**ANSWER:** Bellwood admits the allegations contained in Paragraph 19.

20. On or about October 17, 2012, Bellwood and Image Media entered into an Agreement whereby Bellwood agreed to provide Image Media a leasehold interest on the Bellwood Property, and agreed to use its "best efforts" to grant Image Media a permit providing for the construction, operation, display, maintenance, repair, replacement of an outdoor advertising structure on the Bellwood Property. In exchange, Image Media agreed to pay Bellwood the sum of $800,000 as the purchase price payable as follows: (a) $200,000 upon execution and delivery of the Agreement; (b) $200,000 within five (5) days after issuance by Bellwood of a conditional use permit, any required variances and a local sign permit (which shall be for a period of three (3) years) for the construction, operation and maintenance of the sign structure; and (c) $400,000 upon issuance by IDOT of a permit for construction. A true and accurate copy of the Agreement is attached hereto, is marked at Exhibit F and is incorporated herein by reference.

**ANSWER:** Bellwood admits that the Agreement is attached as Exhibit F and that it reads as identified in Paragraph 20.

21.     Paragraph 2.C. of the Agreement provides "upon payment to the Village of said $400,000, the Village shall deliver to Image Media a duly executed grant of easements in properly recordable form granting Image Media easements in and to the subject property for the purpose set forth in Section 1 above, or a duly executed 99-year lease leasing the subject property to Image Media for such purpose."

**ANSWER:**   Bellwood admits that the Agreement reads as identified in Paragraph 21.

22.     Paragraph 6 of the Agreement provides that if Image Media did not obtain the required permit from IDOT on or before August 31, 2014, that Image Media may terminate the Agreement.  In the alternative, Paragraph 6 of the Agreement provides that if Image Media does not obtain a required permit that Image Media may elect to be granted an easement or 99-year lease on the Village property.

**ANSWER:**   Bellwood admits that the Agreement reads as identified in Paragraph 22.

23.     Paragraph 7.f. of the Agreement provides that "During the pendency of this Agreement, Village shall not issue any permit for the construction, operation or maintenance of any outdoor advertising sign within 500 feet of the property." Further, Paragraph 20 of the Agreement provides "During the term of this Agreement, the Village shall not issue a permit for the construction, operation or maintenance of an outdoor advertising sign within 500 feet of the Subjection Property to any person, partnership, company, corporation or other entity other than Image Media." Pursuant to IDOT's rules and regulations, the only entity capable of constructing a outdoor advertising sign within 500 feet of the Bellwood Property is Paramount.

**ANSWER:**   Bellwood admits that the Agreement reads as identified in Paragraph 23.  The

remaining allegations contained in Paragraph 23 state a legal conclusion to which no response

is necessary.

24.     Paragraph 10 of the Agreement provides that Image Media shall indemnify and hold Bellwood harmless from and against any and all claims and liabilities that may be asserted against Bellwood in regard to any breach of a representation or warranty, or any failure of Image Media to perform or fulfill its covenants or agreements set forth in the Agreement.  In addition, Paragraph 10 provides that Image Media shall indemnify and hold harmless Bellwood "from and against any and all claims and liabilities that may be asserted against the Village by Paramount Outdoor as a result of the Village's entering into this Agreement or the transaction contemplated hereby, except any claims or liabilities arising due to the Village's failure to comply with the applicable statutes, laws or ordinances."

**ANSWER:**   Bellwood admits that the Agreement reads as identified in Paragraph 24.

25.     At no time prior to entering into the Agreement did Bellwood provide notice, through newspaper publication or otherwise, to Paramount, to other billboard operators, or to the public that Bellwood intended to lease the Bellwood property for the construction of a

billboard sign or otherwise. At no time did Bellwood seek bids regarding leasing the Bellwood property for the purpose of constructing a billboard sign.

**ANSWER:** Bellwood denies that Paramount was not made aware of the intention to lease

the Bellwood property for the construction of a billboard. Further answering, Paramount

made an offer to lease the property for the purpose of installing a billboard. Bellwood admits

that it did not actively seek out bids for leasing the property because potential bidders were

actively pursuing Bellwood.

26. On or about October 17, 2012, Bellwood passed Resolution No. 12-76, which authorized the execution of the Agreement between the Village of Bellwood and Image Media. A true and accurate copy of Resolution No. 12-76 is attached hereto, is marked as Exhibit G and is incorporated herein by reference.

**ANSWER:** Bellwood admits the allegations contained in Paragraph 26.

27. On or about November 20, 2012, Bellwood and Image Media entered into an Outdoor Advertising Sign Lease Agreement whereby Bellwood agreed to lease to Image Media the Bellwood property for the purpose of constructing an outdoor advertising structure. The term of the lease was for two (2) years, and did not require any further sums payable to Bellwood other than the $200,000 already paid under the Agreement. A true and accurate copy of Outdoor Advertising Sign Lease Agreement is attached hereto, is marked as Exhibit H and is incorporated herein by reference.

**ANSWER:** Bellwood admits the allegations contained within Paragraph 27.

28. At the present time, despite its Agreement, Image Media is unable to obtain an IDOT permit because the Bellwood Property is less than 500 feet from the Property upon which Paramount already has an IDOT permit.

**ANSWER:** Bellwood lacks sufficient information or knowledge to form a belief as to the

truth of the remaining allegations contained in Paragraph 28.

**Bellwood's and Image Media's Unconstitutional and Anticompetitive Misconduct.**

29. By enacting the Ordinance restricting billboard signs except to properties owned or controlled by it, Bellwood has asserted itself in the market for billboards in Bellwood, and has effectively created a monopoly eliminating any competition, except for its co-conspirator, Image Media, in the construction of all billboards in Bellwood.

**ANSWER:** Bellwood denies the allegations contained in Paragraph 29.

30.     Further, Bellwood and Image Media have conspired to engage in a series of actions intended to completely eliminate competition for the construction of billboards in Bellwood against Paramount and other billboard operators.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 30.

31.     Realizing that Image Media could not currently receive an IDOT permit, Bellwood and Image Media conspired to prevent Paramount from receiving a permit from Bellwood and arranged by the terms of the Agreement for Image Media to attempt to obtain an IDOT permit after the expiration of Paramount's IDOT permit, while at the same time continuing to bar Paramount from constructing a billboard on the Property before the expiration of its IDOT permit.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 31.

<u>COUNT I</u>
<u>Violation of the First Amendment to the</u>
<u>United States Constitution</u>

32.     As an owner outdoor advertising billboards Paramount engages in commercial speech protected by the First Amendment to the United States Constitution.

**ANSWER:**   Bellwood lacks sufficient information or knowledge to form a belief as to the

truth of the remaining allegations contained in Paragraph 32.

33.     The Prior Ordinance banned the construction of all off-site advertising signs, including billboards, in Bellwood.

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 33.

34.     The Ordinance bans the construction of all off-site advertising signs, including billboards, except on property owned or controlled by Bellwood.

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 34.

35.     The First Amendment to the United States Constitution provides that "Congress shall make no law....abridging the freedom of speech."

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 35.

36.     The First Amendment applies to State action pursuant to the Fourteenth Amendment to the United States Constitution.

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 36.

37.     The Prior Ordinance's complete ban on construction of billboards, and the Ordinance's ban on construction of billboards except on Bellwood property, constitute State action which has the effect of suppressing and chilling constitutionally protected expressive conduct.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 37.

38.     Bellwood's Ordinances violate the First Amendment for the following reasons:

    A.   Paramount's speech merits First Amendment protection as it concerns lawful activity and it is not misleading;

    B.   The restriction on Paramount's commercial speech does not seek to further any substantial government interest;

    C.   The restriction on Paramount's commercial speech does not advance any stated government interest as Bellwood allows billboards to be constructed on Bellwood property in which only Bellwood will profit; and

    D.   Bellwood's Ordinance restricts billboards without regard for the free speech interest involved, is not nearly tailored to achieve any government goal, and does not leave ample alternatives for outdoor advertising signs.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 38.

39.   Paramount has suffered and will continue to suffer irreparable injury if it is not allowed to construct a billboard on the Property as Paramount's constitutional rights have been violated and such depravation constitutes irreparable injury.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 39.

40.   Paramount will further suffer irreparable injury as a result of the Ordinance as it will lose revenue from the billboard it intended to construct on the Property and by the loss of reputation and standing in the community.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 40.

41.   There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 41.

<u>COUNT II</u>
<u>Violation of Paramount's Right to Due Process</u>

32.   The Fourteenth Amendment to the United States Constitution states "no State shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law."

**ANSWER:**   Bellwood admits the allegations contained in Paragraph 32.

33.   Bellwood, in conjunction with Image Media, is interfering with and is taking away Paramount's rights under its Lease Agreement and IDOT permit to construct and maintain a billboard for the purpose of commercial expression in, contravention of the due process provision of the Fourteenth Amendment.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 33.

34.   By adopting and implementing the Ordinance and entering into the Agreement with Image Media, Bellwood has acted in an arbitrary and capricious manner not rationally related to any legitimate government interest.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 34.

35. Bellwood, in conjunction with Image Media, has violated Paramount's right to due process of law by:
   A.   Enacting an ordinance which allows Bellwood, through its Mayor and Trustees, to exercise arbitrary discretion in determining where and by whom billboards can be constructed and built in Bellwood;
   B.   Creating a monopoly in favor of Bellwood for  the construction and operation of billboards along Interstate 290 with the goal of displacing competition;
   C.   Interfering with Paramount's leasehold interest in the Property and Paramount's right to determine the best use of the Property;
   D.   Depriving Paramount of the ability to construct a billboard on the Property;
   E.   Denying Paramount the benefit of its IDOT permit, without due process of law;
   F.   Depriving Paramount of revenue from the billboard without due process of law; and
   G.   Enabling Bellwood to arbitrarily decide to allow Image Media to construct a billboard and to prevent Paramount from constructing a billboard; and
   H.   Allowing Bellwood to avoid having to submit a bid or to participate in competitive bidding for the lease of the property.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 34.

35.   The joint acts of Bellwood and Image Media in entering into the Agreement and implementing the Ordinance are actions under the color of law within the meaning of the Fourteenth Amendment.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 35.

36.   Paramount has suffered and will continue to suffer irreparable injury if it is not allowed to construct a billboard on the Property as Paramount's constitutional rights have been violated and such depravation constitutes irreparable injury.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 36.

37.     Paramount will further suffer irreparable injury as a result of the Agreement and the Ordinance as it will lose revenue from the billboard it intended to construct on the Property and by the loss of reputation and standing in the community.
**ANSWER:**    Bellwood denies the allegations contained within Paragraph 37.

38.     There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**    Bellwood denies the allegations contained within Paragraph 38.

<u>COUNT III</u>
<u>Violation of the Equal Protection Clause of the Fourteenth Amendment</u>

32.     The Fourteenth Amendment to the United States Constitution states "No State shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States.......nor deny to any person within its jurisdiction equal protection of the laws."

**ANSWER:**    Bellwood admits the allegations contained within Paragraph 32.

33.     Bellwood violated Paramount's constitutional rights guaranteed by the Fourteenth Amendment by treating similarly situated billboard operators, specifically Image Media, in a more favorable manner.

**ANSWER:**    Bellwood denies the allegations contained within Paragraph 33.

34.     Bellwood is treating Paramount differently than other similarly situated billboard operators in violation of the Equal Protection Clause in that it has conspired with Image Media to prevent Paramount from constructing a billboard on the Property, while at the same time assisting Image Media in its attempt to construct a billboard in Bellwood.

**ANSWER:**    Bellwood denies the allegations contained within Paragraph 34.

35.     Bellwood, in conjunction with Image Media, is interfering with and taking away Paramount's rights under its lease and IDOT permit to construct a billboard on the Property in contravention of the equal protection provisions of the Fourteenth Amendment.

**ANSWER:**    Bellwood denies the allegations contained within Paragraph 35.

36.     The joint actions of Bellwood and Image Media in entering into their Agreement and in implementing the Ordinance are actions under the color of law in the meaning of Fourteenth Amendment.

**ANSWER:**    Bellwood denies the allegations contained within Paragraph 36.

37.     Paramount has suffered or will suffer irreparable injury if it's not allowed to

construct a billboard on the Property as Paramount's constitutional rights have been violated and such deprivation constitutes irreparable injury.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 37.

38.     Paramount will further suffer irreparable injury as a result of the Agreement and Ordinance as it will lose revenue from the billboard it intended to construct on the Property and also will suffer loss of reputation and standing in the community.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 38.

39.     There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 39.

COUNT IV
Monopolization, Attempt to Monopolize, and Conspiracy to Monopolize
(§ 2 of the Sherman Act)

32.     The relevant product market is the market for billboards or other off-site advertising structures.

**ANSWER:**   Bellwood lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 32.

33.     The relevant geographic market consists of the boundaries of Bellwood.

**ANSWER:**   Bellwood lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 33.

34.     The relevant geographical market and relevant product market herein are referred to as the "relevant market."

**ANSWER:**   Bellwood lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 34.

35.     Prior to the adoption of the Ordinance, Paramount was able to actively compete in leasing property, constructing and operating billboards in Bellwood.

**ANSWER:**   Bellwood lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 35.

36.     By adopting the Ordinance, Bellwood has acquired possession of and has asserted monopoly power in the relevant market. Pursuant to the Ordinance, Bellwood has the ability to exclude competition in Bellwood in the construction and operation of billboards. Bellwood has in fact barred Paramount and all other billboard operators, except Image Media, from the relevant market. Bellwood has refused to announce bids for the lease of the Bellwood property.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 36.

37.     Bellwood has acted willfully in the acquisition and maintenance of its monopoly power.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 37.

38.     Because of Bellwood's anticompetitive acts, there are no alternatives for Paramount to construct and operate a billboard in Bellwood.

**ANSWER:**  Bellwood lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 38.

39.     Bellwood has complete discretion to allow the construction and operation of billboards, and has excluded all competition in the relevant market, securing a monopoly for itself and Image Media in controlling 100% of the relevant market.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 39.

40.     The acquisition of the monopoly in the relevant market has been secured by illegal means, and Bellwood has acted with an intention to create a monopoly.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 40.

41.     Bellwood's actions constitute attempted and actual monopolization of the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 41.

42.     The active participation of Image Media with Bellwood constitutes a conspiracy to monopolize the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER:**  Bellwood denies the allegations contained within Paragraph 42.

43.     Bellwood's and Image Media's acts have produced, and unless enjoined by the Court, will continue to produce the following anticompetitive effects:
   A.   Competition in the relevant market has been, and will continue to be, unreasonably restrained and eliminated, and has been, and will continue to be,

monopolized by Bellwood and Image Media;

B.   Barriers to entry in the relevant market have been, and will continue to be, raised to levels that are insurmountable, assuring that Bellwood and Image Media will attain, maintain and increase their monopoly power; and

C.   Innovation and development in the relevant market has been, and will continue to be, stifled.

**ANSWER:**   Bellwood denies the allegations contained within Paragraph 43.

42.   The activities of Bellwood and Image Media have effected (sic) the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines, particularly in regard to advertisements by national companies on the billboards.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 44 (which is

improperly numbered as 42).

43.   The acts of Bellwood and Image Media have proximately caused injury to Paramount in its business and property.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 45 (which is

improperly numbered as 43).

44.   Paramount has been injured in its business and property because Bellwood, in concert with Image Media, has unlawfully foreclosed Paramount and others from competing in the construction and operation of billboards in Bellwood.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 46 (which is

improperly numbered as 44).

45.   Paramount has been substantially injured in its business and property by the acts of Bellwood and Image Media in that Paramount has lost the ability to construct a billboard on its leased Property as allowed by its IDOT permit, and the resulting loss of revenues therefrom.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 47 (which is

improperly numbered as 45).

46.   Unless restrained by the Court, such activities threaten further losses and damages to Paramount.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 48 (which is

improperly numbered as 46).

47.     There is no clearly articulated and affirmatively expressed State policy under any statute to authorize Bellwood to displace competition in the relevant market, or to establish a monopoly and extract monopoly profits for itself.

**ANSWER:**  Bellwood denies the allegations contained within this Paragraph 49 (which is

improperly numbered as 47).

48.     Paramount has suffered irreparable injury by being precluded from competing in the relevant market.

**ANSWER:**  Bellwood denies the allegations contained within this Paragraph 50 (which is

improperly numbered as 48).

49.     Bellwood is immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. § 34-36, and, therefore, Paramount has no adequate remedy at law against Bellwood.

**ANSWER:**  Bellwood admits that it is immune from antitrust damages by the Local

Government Antitrust Immunity Act but denies the remaining allegations contained within

this Paragraph 51 (which is improperly numbered as 49).

COUNT V
Conspiracy in Restraint of Trade
(§ 1 of The Sherman Act)

50.     The entry of the Agreement between Bellwood and Image Media constitutes a contract, combination, or conspiracy between Image Media and Bellwood that unreasonably restrains competition in the relevant market for the business in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:**  Bellwood denies the allegations contained within this Paragraph 52 (which is

improperly numbered as 50).

51.     This contract, combination, or conspiracy has had and will continue to have anticompetitive effects in the relevant market including reducing competition for the construction and operation of billboards and raising barriers to entry of the relevant market.

**ANSWER:**  Bellwood denies the allegations contained within this Paragraph 53 (which is

improperly numbered as 51).

52.     The activities of Bellwood and Image Media have effected (sic) the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines, particularly in regard to advertisements by national companies on the billboards.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 54 (which is improperly numbered as 52).

53.     The acts of Bellwood and Image Media have proximately caused injury to Paramount in its business and property.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 55 (which is improperly numbered as 53).

54.     Paramount has been injured in its business and property by reason of the fact that Bellwood, in concert with Image Media, has unlawfully foreclosed Paramount and others from competing in the construction and operation of billboards in Bellwood.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 56 (which is improperly numbered as 54).

55.     Paramount has been substantially injured in its business and property by the acts of Bellwood and Image Media in that Paramount has lost the ability to construct a billboard on its leased Property as allowed by its State permit and the resulting loss of revenues therefrom.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 57 (which is improperly numbered as 55).

56.     Unless restrained by the Court, such activities threaten further losses and damages to Paramount.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 58 (which is improperly numbered as 56).

57.     There is no clearly articulated and affirmatively expressed State policy under any statute to authorize Bellwood to displace competition in the relevant market, or to establish a monopoly and extract monopoly profits for itself.

**ANSWER:** Bellwood denies the allegations contained within this Paragraph 59 (which is improperly numbered as 57).

58.     Paramount has suffered irreparable injury by being precluded from competing in the relevant market.

**ANSWER:**   Bellwood denies the allegations contained within this Paragraph 60 (which is

improperly numbered as 58).

59.     Bellwood is immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. § 34-36, and, therefore, Paramount has no adequate remedy at law against Bellwood.

**ANSWER:**   Bellwood admits that it is immune from damages pursuant to the Local

Government Antitrust Immunity Act but denies the remaining allegations contained within

this Paragraph 61 (which is improperly numbered as 59).

<u>COUNT VI</u>
<u>Declaratory Judgment that Bellwood did not have the authority to
enter into the Agreement with Image Media</u>

32.     Section 5/11-76-2 of the Illinois Municipal Code provides that before the corporate authorities of City or Village make a lease on real estate in excess of 20 years, they shall given notice of an intent to adopt such a lease.  Further, Section 5/11-76-2 provides that "nothing in this Section prevents the corporate authorities from determining the sale or lease of property to the highest responsible bidder." 65 ILCS 5/11-76-2.

**ANSWER:**   Bellwood admits that the cited statutes read as identified in Paragraph 32.

33.     In effect, the Agreement contemplates leasing to Image Media the Bellwood Property for a term of 99 years.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 33.

34.     Despite that, Bellwood did not have authority to lease the real estate because it did not comply with the notice-by-publication requirement of Section 5/11-76-1 of the Illinois Municipal Code.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 34.

35.     Paramount has a clearly ascertainable right and a protectable interest in its IDOT permit and leasehold interest in the Property.

**ANSWER:**   Bellwood denies the allegations contained in Paragraph 35.

36.     Because it has not complied with Illinois Municipal Code, Bellwood does not

have the authority to enter into an Agreement which is intended to prevent Paramount from constructing a billboard on the Property and to ensure that Image Media will receive the necessary permits to construct a billboard on Bellwood's Property.

**ANSWER:**     Bellwood denies the allegations contained in Paragraph 36.

37.     Paramount has suffered irreparable injury.

**ANSWER:**     Bellwood denies the allegations contained in Paragraph 37.

38.     There is no adequate remedy at law to fully and adequately compensate Paramount as Bellwood's failure to comply with the Illinois Municipal Code constitutes irreparable injury.

**ANSWER:**     Bellwood denies the allegations contained in Paragraph 38.

## AFFIRMATIVE DEFENSES

For its affirmative defenses to Plaintiff's Complaint, Defendant Village of Bellwood states as follows:

## FIRST AFFIRMATIVE DEFENSE

1.     Count I of Plaintiff's Complaint, alleging First Amendment violations, is barred by the *Central Hudson* doctrine, which permits the regulation of commercial speech. *Central Hudson Gas Electric Corporation v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343 (1980). The restrictions imposed by Bellwood through Ordinances § 156.207 and its subsequent amendments were permissible restrictions on commercial speech for the important government interest of preventing and eliminating visual blight in the Bellwood.

## SECOND AFFIRMATIVE DEFENSE

1.     Count I of Plaintiff's Complaint is also barred by the statute of limitations. While Section 1983 does not contain an express statute of limitations, the 7th Circuit has consistently held that the appropriate statute of limitations for Section 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13-202. *Ashafa v. City of Chicago*, 146 F.3d 459 (7th Cir. 1998).

## THIRD AFFIRMATIVE DEFENSE

1. Count II of Plaintiff's Complaint is not ripe for adjudication as Plaintiff has never applied for a billboard permit. Without a denial of Plaintiff's application, there can be no violation of Plaintiff's due process rights and, therefore, Plaintiff lacks standing to bring this cause of action.

## FOURTH AFFIRMATIVE DEFENSE

1. Count III of Plaintiff's Complaint, alleging an equal protection claim, necessarily fails because in Plaintiff's own pleadings, it acknowledges that it and Defendant, Image Media Advertising, Inc., are direct competitors. As competitors, they are members of the same class. Thus, there is no class-based discrimination, a necessary element of a Substantive Due Process claim. *See National Advertising Co. v. Chicago, 788 F. Supp. 994 (N.D. Ill. 1991) citing Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982).*

2. To the extent Plaintiff attempts to base its Due Process claim on a theory of "selective enforcement," Selective enforcement claims must be predicated on "purposeful or invidious discrimination[.]" *See National Advertising Co. v. Chicago*, 788 F. Supp. 994 (N.D. Ill. 1991) *citing Snowden v. Hughes*, 321 U.S. 1, 8, 88 L. Ed. 497, 64 S. Ct. 397 (1944). Erroneous, or arbitrary administration of government powers do not give rise to an equal protection claim. *Id.*

3. Plaintiff cannot demonstrate that Bellwood engaged in purposeful or invidious discrimination against Plaintiff in any of the purported actions taken by Bellwood as alleged by Plaintiff in its Complaint. *See* Complaint, Dkt.No. 1, ¶ 35.

4. Because Plaintiff cannot demonstrate either that it is a member of a discrete class suffering disparate treatment, or that Bellwood engaged in purposeful or invidious

discrimination, Count II of Plaintiff's Complaint must necessarily fail.

## FIFTH AFFIRMATIVE DEFENSE

1.       Counts IV and V of Plaintiff's Complaint allege violations of the Sherman Act, 15 U.S.C. § 1 (Count V) and § 2 (Count IV).

2.       In *Parker*, the United States Supreme Court held that the Sherman Act did not apply to anticompetitive restraints imposed by the States "as an act of government." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 370 (1991) (*citing Parker v. Brown*, 317 U.S. 341, 352 (1943)). While *Parker* immunity does not apply directly to local governments, the Supreme Court has recognized that a municipality's restriction of competition may be an authorized implementation of state policy, and have accorded *Parker* immunity where that is the case. *Omni*, 499 U.S. at 370.

3.       Bellwood possesses the requisite delegated authority. In Illinois, corporate authorities in each municipality have the authority to regulate and limit the height and bulk of buildings, the authority to regulate and limit the intensity of the use of lot areas, and the authority to regulate and determine the area of open spaces on or along any street or traffic-way. 65 ILCS 5/11-13-1(1)-(3).

4.       Bellwood's restrictions on billboard placement within its borders is a permissible exercise of the authority delegated to it by the state of Illinois. These actions entitle Bellwood to immunity from Plaintiff's Sherman Act claims, as asserted in Counts IV and V of Plaintiff's Complaint.

## SIXTH AFFIRMATIVE DEFENSE

1.       Plaintiff's claims may be precluded, in whole or in part, by estoppel or waiver.

## SEVENTH AFFIRMATIVE DEFENSE

1.      Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by the acts and/or omissions of persons or entities over which Defendant has no control or authority.

EIGHTH AFFIRMATIVE DEFENSE

1.      Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by Plaintiff's own acts and/or omissions.

WHEREFORE, Defendant Village of Bellwood, requests that this Court dismiss Plaintiff's Complaint, in its entirely and with prejudice, that the Court grant Bellwood its costs and fees in defending this action, and any other relief this Court deems just.

**DEEFENDANT VILLAGE OF BELLWOOD DEMANDS TRIAL BY JURY.**

Dated: December 9, 2013                           Respectfully submitted,
                                                                 VILLAGE OF BELLWOOD

                                                       By:_____/s/ Cory D. Anderson_____
                                                                     One of its Attorneys

John J. Rock, ARDC #6237980
Cory D. Anderson, ARDC #6274473
Stacy A. Benjamin, ARDC #6255621
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax