**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Paramount Media Group, Inc., an Illinois corporation, | ) | No. 13 CV 3994 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Judge Charles Norgle |
| Village of Bellwood, an Illinois municipal corporation, and Image Media Advertising, Inc., an Illinois corporation | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**IMAGE MEDIA ADVERTISING, INC.'S ANSWER TO COMPLAINT**

Defendants, Image Media Advertising, Inc. ("Image Media"), by and through their attorneys, Daniel I. Schlade of Arnstein & Lehr LLP, hereby Answers the Complaint for Constitutional Rights Violations, Antitrust Violations and Other Claims Seeking Preliminary and Permanent Injunctions and Other Relief filed by Paramount Media Group, Inc.'s ("Paramount"). In support thereof, Image Media states as follows:

**NATURE OF ACTION**

1.      This is an action for relief based on violations of Paramount Media Group, Inc.'s ("Paramount") constitutional rights under the First and Fourteenth Amendments to the United States Constitution; as well as antitrust claims under the Sherman Act due to the governmental interference with private contractual relationships, unlawful exercise of government authority, and monopolization; and declaratory judgment that the Village of Bellwood ("Bellwood") exceeded its authority to lease property to Image Media Advertising, Inc. ("Image Media").

**ANSWER:**   Image Media admits that Paramount has filed such claims; further answering, Image Media denies that Paramount is entitled to any relief pursuant to said claims.

**THE PARTIES**

2.      Paramount is an Illinois corporation located in Naperville, Illinois. Paramount purchases and/or leases property, constructs outdoor advertising displays and sells advertisements on its outdoor advertising displays.

**ANSWER:**     Admitted.

3.     Bellwood is an Illinois municipal corporation located in Cook County, Illinois.

**ANSWER:**     Admitted.

4.     Image Media is an Illinois corporation located in Hinsdale, Illinois. Image Media also purchases and/or leases property, constructs outdoor advertising displays and sells advertisements on its outdoor advertising displays.

**ANSWER:**     Admitted.

## JURISDICTION AND VENUE

5.     Paramount's claims in Counts I through V are all based on federal constitutional issues relying on causes of action authorized under the Civil Rights Act, 42 U.S.C. § 1983, or are federal antitrust claims under the Sherman Act, 15 U.S.C. §§ 1 and 2, and authorized under §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and therefore this Court has federal jurisdiction under 28 U.S.C. § 1331.  Paramount's claim in Count VI that Bellwood has not complied with the Illinois Municipal Code is based on this Court's supplemental jurisdiction under 28 U.S.C.§ 1367.

**ANSWER:**     Admitted.

6.     Venue is proper in the Northern District of Illinois as Defendants reside in the Northern District; Paramount does business in the Northern District; the actions complained about occurred in the Northern District; and the likely witnesses necessary for this case generally reside in the Northern District.

**ANSWER:**     Admitted.

## BACKGROUND FACTS
### Paramount's Efforts to Construct a Billboard in Bellwood

7.     The Illinois Highway Advertising Control Act of 1971 ("the Act") regulates "the erection and maintenance of outdoor advertising signs, displays and devices in areas adjacent to the interstate highways and primary highways." 225 ILCS 440/1. Implementation and enforcement of the Act resides with the Illinois Department of Transportation ("IDOT"). 225 ILCS 440-14.01.

**ANSWER:**  Image Media admits the first sentence; further answering Image Media denies the

second sentence of the allegation.

8.      The Act permits outdoor advertising in "business areas." 225 ILCS 440/1, 4.04. With respect to signs along interstate highways, an area is a "business area" if the land is used or zoned for commercial or industrial activities. 225 ILCS 440/3.12; 92 Ill. Admin. Code § 522.20.

**ANSWER:**      Image Media admits the first sentence in the allegation; further answering, Image Media denies the second sentence in the allegation.

9.      In order to erect a billboard sign, it is necessary that a billboard operator obtain a permit from IDOT. 225 ILCS 440/8; 92 Ill. Admin. Code § 522.30.

**ANSWER:**      Image Media states that 225 ILCS 440/8 expressly states that an IDOT permit is not required to erect all billboard signs, and therefore Image Media denies the allegation as written.

10.      Further, pursuant to IDOT's rules and regulations, no billboard sign may be erected along the same side of an interstate highway or expressway within 500 feet of another sign or location where another such sign has been permitted but not yet erected. 92 Ill. Admin. Code § 522.200(d).

**ANSWER:**      Image Media states that 92 Ill. Admin. Code § 522.200(d) carves out certain exceptions to the 500 foot rule cited in Paragraph 10, and therefore Image Media denies the allegation as written.

11.      On or about February 22, 2005, Paramount entered into a Lease Agreement with Villa Park Trust and Savings Bank as Trustee under Trust No. 1531. The Lease Agreement provided that Villa Park Trust and Savings Bank, as Trustee, would lease to Paramount property located at the commonly known address of 1133-35 Bellwood Ave, Bellwood, Illinois ("the Property"), for the purpose of erecting and maintaining a billboard advertising structure. A true and accurate copy of the Lease Agreement is attached hereto, is marked as Exhibit A and is incorporated herein by reference.

**ANSWER:**      Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegation, and therefore denies same.

12.      The Property is located along the Interstate 290 expressway.

**ANSWER:**      Admitted.

13.     Pursuant to the Bellwood Code of Ordinances, the Property at the time was located in a B1 business zoning district, which is a "business area" as defined by the Act.

**ANSWER:**     Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegation, and therefore denies same.

14.     On May 25, 2011, Paramount, through its President, Dave Quas ("Quas"), submitted to IDOT an Application for Outdoor Advertising Permit Business Area Sign-Interstate Highway, which sought the issuance of a State permit to construct a billboard on the Property. A true and accurate copy of the Application is attached hereto, is marked as Exhibit B and is incorporated herein by reference.

**ANSWER:**     Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegation, and therefore denies same.

15.     On or about July 21, 2011, Paramount received correspondence from IDOT informing Paramount that its application had been approved and that Paramount had been issued a State Outdoor Advertising Permit ("IDOT permit"). The correspondence from IDOT stated that the IDOT permit was valid for three (3) years after the date of issuance. A true and accurate copy of the application is attached hereto, is marked as Exhibit C and is incorporated herein by reference.

**ANSWER:**     Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegation, and therefore denies same.

### Bellwood's Sign Ordinances

16.     Title XV, Chapter 156, § 156.207 of the Bellwood Code of Ordinances stated: *"Off-site advertising sign permit.* All owners or operators of off-site advertising signs must apply for and obtain an offsite advertising sign permit." A true and accurate copy of Section 156.207 of the Bellwood Code of Ordinances is attached hereto, is marked as Exhibit D and is incorporated herein by reference.

**ANSWER:**     Admitted.

17.     On or about February 25, 2009, Bellwood passed Ordinance 9-4 (the "Prior Ordinance"), which amended Section 156.207 of the Bellwood Code of Ordinances to state: "*Erection ban.* Except as otherwise provided in § 156.20(G), subsequent to the effective date of this subchapter, no new off-site advertising sign permit will be issued by the Village."

**ANSWER:**     Admitted.

18.     On or about March 21, 2012, Bellwood passed Ordinance No. 12-9 (the "Ordinance") again amending Section 156.207. The Ordinance provided that Section 156.07

would be amended to now state: "*Village property*. An off-site advertising sign permit proposed to be located on Village owned or controlled property may be exempted from the terms of this Chapter subject to any conditions set by the Mayor and Board of Trustees." A true and accurate copy of Ordinance No. 12-9 is attached hereto is marked as Exhibit E and is incorporated herein by reference.

**ANSWER:**    Admitted.

## Bellwood's and Image Media's Agreement

19.    As of October 17, 2012, Bellwood was the owner of vacant property located at the commonly known address of 1156 Bellwood Ave., Bellwood, Illinois (the "Bellwood Property"), which formerly was the location of a gas station.

**ANSWER:**    Admitted.

20.    On or about October 17, 2012, Bellwood and Image Media entered into an Agreement whereby Bellwood agreed to provide Image Media a leasehold interest on the Bellwood Property, and agreed to use its "best efforts" to grant Image Media a permit providing for the construction, operation, display, maintenance, repair, replacement of an outdoor advertising structure on the Bellwood Property.  In exchange, Image Media agreed to pay Bellwood the sum of $800,000 as the purchase price payable as follows: (a) $200,000 upon execution and delivery of the Agreement; (b) $200,000 within five (5) days after issuance by Bellwood of a conditional use permit, any required variances and a local sign permit (which shall be for a period of three (3) years) for the construction, operation and maintenance of the sign structure; and (c) $400,000 upon issuance by IDOT of a permit for construction. A true and accurate copy of the Agreement is attached hereto, is marked at Exhibit F and is incorporated herein by reference.

**ANSWER:**    Image Media admits that it entered into an agreement with Bellwood on or about October 17, 2012; further answering, Image Media denies Paramount's characterization and description of the terms of the Agreement.

21.    Paragraph 2.C. of the Agreement provides "upon payment to the Village of said $400,000, the Village shall deliver to Image Media a duly executed grant of easements in properly recordable form granting Image Media easements in and to the subject property for the purpose set forth in Section 1 above, or a duly executed 99-year lease leasing the subject property to Image Media for such purpose."

**ANSWER:**    Admitted.

22.    Paragraph 6 of the Agreement provides that if Image Media did not obtain the required permit from IDOT on or before August 31, 2014, that Image Media may terminate the Agreement.  In the alternative, Paragraph 6 of the Agreement provides that if Image Media does

5

not obtain a required permit, that Image Media may elect to be granted an easement or 99-year lease on the Village property.

**ANSWER:**     Admitted.

23.     Paragraph 7.f. of the Agreement provides that "During the pendency of this Agreement, Village shall not issue an permit for the construction, operation or maintenance of any outdoor advertising sign within 500 feet of the property." Further, Paragraph 20 of the Agreement provides "During the term of this Agreement, the Village shall not issue a permit for the construction, operation or maintenance of an outdoor advertising sign within 500 feet of the Subjection Property to any person, partnership, company, corporation or other entity other than Image Media." Pursuant to IDOT's rules and regulations, the only entity capable of constructing a outdoor advertising sign within 500 feet of the Bellwood Property is Paramount.

**ANSWER:**     Image Media admits that the quoted language in Paragraphs 7.f and 20 is

contained in the Agreement; further answering Image Media lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations, and therefore denies same.

24.     Paragraph 10 of the Agreement provides that Image Media shall indemnify and hold Bellwood harmless from and against any and all claims and liabilities that may be asserted against Bellwood in regard to any breach of a representation or warranty, or any failure of Image Media to perform or fulfill its covenants or agreements set forth in the Agreement. In addition, Paragraph 10 provides that Image Media shall indemnify and hold harmless Bellwood "from and against any and all claims and liabilities that may be asserted against the Village by Paramount Outdoor as a result of the Village's entering into this Agreement or the transaction contemplated hereby, except any claims or liabilities arising due to the Village's failure to comply with the applicable statutes, laws or ordinances."

**ANSWER:**     Image Media admits that the cited language in Paragraph 10 is contained in the

Agreement.

25.     At no time prior to entering into the Agreement did Bellwood provide notice, through newspaper publication or otherwise, to Paramount, to other billboard operators, or to the public that Bellwood intended to lease the Bellwood property for the construction of a billboard sign or otherwise.  At no time did Bellwood seek bids regarding leasing the Bellwood property for the purpose of constructing a billboard sign.

**ANSWER:**     Denied.

26.     On or about October 17, 2012, Bellwood passed Resolution No. 12-76, which authorized the execution of the Agreement between the Village of Bellwood and Image Media. A true and accurate copy of Resolution No. 12-76 is attached hereto, is marked as Exhibit G and is incorporated herein by reference.

**ANSWER:**     Admitted.

27.     On or about November 20, 2012, Bellwood and Image Media entered into an Outdoor Advertising Sign Lease Agreement whereby Bellwood agreed to lease to Image Media the Bellwood property for the purpose of constructing an outdoor advertising structure. The term of the lease was for two (2) years, and did not require any further sums payable to Bellwood other than the $200,000 already paid under the Agreement. A true and accurate copy of Outdoor Advertising Sign Lease Agreement is attached hereto, is marked as Exhibit H and is incorporated herein by reference.

**ANSWER:**     Admitted.

28.     At the present time, despite its Agreement, Image Media is unable to obtain an IDOT permit because the Bellwood Property is less than 500 feet from the Property upon which Paramount already has an IDOT permit.

**ANSWER:**     Denied.

### Bellwood's and Image Media's Unconstitutional and Anticompetitive Misconduct

29.     By enacting the Ordinance restricting billboard signs except to properties owned or controlled by it, Bellwood has asserted itself in the market for billboards in Bellwood, and has effectively created a monopoly eliminating any competition, except for its co-conspirator, Image Media, in the construction of all billboards in Bellwood.

**ANSWER:**     Denied.

30.     Further, Bellwood and Image Media have conspired to engage in a series of actions intended to completely eliminate competition for the construction of billboards in Bellwood against Paramount and other billboard operators.

**ANSWER:**     Denied.

31.     Realizing that Image Media could not currently receive an IDOT permit, Bellwood and Image Media conspired to prevent Paramount from receiving a permit from Bellwood and arranged by the terms of the Agreement for Image Media to attempt to obtain an IDOT permit after the expiration of Paramount's IDOT permit, while at the same time continuing to bar Paramount from constructing a billboard on the Property before the expiration of its IDOT permit.

**ANSWER:**     Denied.

## COUNT I
### Violation of the First Amendment to the United States Constitution

1-31.    The allegations of paragraphs 1 through 31 of the Nature of Action, The Parties, Jurisdiction and Venue, and Background Facts sections are re-alleged as paragraphs 1 through 31 of Count I.

**ANSWER:**    Image Media incorporates by reference its answers to Paragraphs 1 through 31, as

is set forth in full herein for Paragraphs 1 through 31 of Count I.

32.    As an owner outdoor advertising billboards Paramount engages in commercial speech protected by the First Amendment to the United States Constitution.

**ANSWER:**    Image Media lacks knowledge or information sufficient to form a belief about the

truth of the allegations, and therefore denies same.

33.    The Prior Ordinance banned the construction of all off-site advertising signs, including billboards, in Bellwood.

**ANSWER:**    Image Media lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations, and therefore denies same.

34.    The Ordinance bans the construction of all off-site advertising signs, including billboards, except on property owned or controlled by Bellwood.

**ANSWER:**    Image Media lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations, and therefore denies same.

35.    The First Amendment to the United States Constitution provides that "Congress shall make no law....abridging the freedom of speech."

**ANSWER:**    Admitted.

36.    The First Amendment applies to State action pursuant to the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    Admitted.

37.    The Prior Ordinance's complete ban on construction of billboards, and the Ordinance's ban on construction of billboards except on Bellwood property, constitute State action which has the effect of suppressing and chilling constitutionally protected expressive conduct.

**ANSWER:**     Denied.

38.     Bellwood's Ordinances violate the First Amendment for the following reasons:

    A.     Paramount's speech merits First Amendment protection as it concerns lawful activity and it is not misleading;

    B.     The restriction on Paramount's commercial speech does not seek to further any substantial government interest;

    C.     The restriction on Paramount's commercial speech does not advance any stated government interest as Bellwood allows billboards to be constructed on Bellwood property in which only Bellwood will profit; and

    D.     Bellwood's Ordinance restricts billboards without regard for the free speech interest involved, is not nearly tailored to achieve any government goal, and does not leave ample alternatives for outdoor advertising signs.

**ANSWER:**     Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38(a), and therefore denies same; further answering, Image Media denies all of the remaining allegations in Paragraph 38.

39.     Paramount has suffered and will continue to suffer irreparable injury if it is not allowed to construct a billboard on the Property as Paramount's constitutional rights have been violated and such depravation constitutes irreparable injury.

**ANSWER:**     Denied.

40.     Paramount will further suffer irreparable injury as a result of the Ordinance as it will lose revenue from the billboard it intended to construct on the Property and by the loss of reputation and standing in the community.

**ANSWER:**     Denied.

41.     There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**     Image Media denies that Paramount is entitled to any damages at law or equity, and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

## COUNT II
## Violation of Paramount's Right to Due Process

1-31. The allegations of paragraphs 1 through 31 of the Nature of Action, The Parties, Jurisdiction and Venue, and Background Facts sections are re-alleged as paragraphs 1 through 31 of Count II.

**ANSWER:**     Image Media incorporates by reference its answers to Paragraphs 1 through 31, as is set forth in full herein for Paragraphs 1 through 31 of Count II.

32.     The Fourteenth Amendment to the United States Constitution states "no State shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law."

**ANSWER:**     Admitted.

33. Bellwood, in conjunction with Image Media, is interfering with and is taking away Paramount's rights under its Lease Agreement and IDOT permit to construct and maintain a billboard for the purpose of commercial expression in, contravention of the due process provision of the Fourteenth Amendment.

**ANSWER:**     Denied.

34.     By adopting and implementing the Ordinance and entering into the Agreement with Image Media, Bellwood has acted in an arbitrary and capricious manner not rationally related to any legitimate government interest.

**ANSWER:**     Denied.

35.     Bellwood, in conjunction with Image Media, has violated Paramount's right to due process of law by:

> A.     Enacting an ordinance which allows Bellwood, through its Mayor and Trustees, to exercise arbitrary discretion in determining where and by whom billboards can be constructed and built in Bellwood;

      B.      Creating a monopoly in favor of Bellwood for the construction and operation of billboards along Interstate 290 with the goal of displacing competition;

      C.      Interfering with Paramount's leasehold interest in the Property and Paramount's right to determine the best use of the Property;

      D.      Depriving Paramount of the ability to construct a billboard on the Property;

      E.      Denying Paramount the benefit of its IDOT permit, without due process of law;

      F.      Depriving Paramount of revenue from the billboard without due process of law; and

      G.      Enabling Bellwood to arbitrarily decide to allow Image Media to construct a billboard and to prevent Paramount from constructing a billboard; and

      H.      Allowing Bellwood to avoid having to submit a bid or to participate in competitive bidding for the lease of the property.

**ANSWER:**    Denied.

35.    The joint acts of Bellwood and Image Media in entering into the Agreement and implementing the Ordinance are actions under the color of law within the meaning of the Fourteenth Amendment.

**ANSWER:**    Denied.

36.    Paramount has suffered and will continue to suffer irreparable injury if it is not allowed to construct a billboard on the Property as Paramount's constitutional rights have been violated and such depravation constitutes irreparable injury.

**ANSWER:**    Denied.

37.    Paramount will further suffer irreparable injury as a result of the Agreement and the Ordinance as it will lose revenue from the billboard it intended to construct on the Property and by the loss of reputation and standing in the community.

**ANSWER:**    Denied.

38.    There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**     Image Media denies that Paramount is entitled to any damages at law or equity, and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

**COUNT III**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**

1-31.    The allegations of paragraphs 1 through 31 of the Nature of Action, The Parties, Jurisdiction and Venue, and Background Facts sections are re-alleged as paragraphs 1 through 31 of Count III.

**ANSWER:**     Image Media incorporates by reference its answers to Paragraphs 1 through 31, as is set forth in full herein for Paragraphs 1 through 31 of Count III.

32.    The Fourteenth Amendment to the United States Constitution states "No State shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States.......nor deny to any person within its jurisdiction equal protection of the laws."

**ANSWER:**     Admitted.

33.    Bellwood violated Paramount's constitutional rights guaranteed by the Fourteenth Amendment by treating similarly situated billboard operators, specifically Image Media, in a more favorable manner.

**ANSWER:**     Denied.

34.    Bellwood is treating Paramount differently than other similarly situated billboard operators in violation of the Equal Protection Clause in that it has conspired with Image Media to prevent Paramount from constructing a billboard on the Property, while at the same time assisting Image Media in its attempt to construct a billboard in Bellwood.

**ANSWER:**     Denied.

35.    Bellwood, in conjunction with Image Media, is interfering with and taking away Paramount's rights under its lease and IDOT permit to construct a billboard on the Property in contravention of the equal protection provisions of the Fourteenth Amendment.

**ANSWER:**     Denied.

36.    The joint actions of Bellwood and Image Media in entering into their Agreement and in implementing the Ordinance are actions under the color of law in the meaning of Fourteenth Amendment.

**ANSWER:**    Denied.

37.    Paramount has suffered or will suffer irreparable injury if its not allowed to construct a billboard on the Property as Paramount's constitutional rights have been violated and such deprivation constitutes irreparable injury.

**ANSWER:**    Denied.

38.    Paramount will further suffer irreparable injury as a result of the Agreement and Ordinance as it will lose revenue from the billboard it intended to construct on the Property and also will suffer loss of reputation and standing in the community.

**ANSWER:**    Denied.

39.    There is no adequate remedy at law to fully and adequately compensate Paramount for the damages it will suffer.

**ANSWER:**    Image Media denies that Paramount is entitled to any damages at law or equity,

and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be

awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by

the court.

### COUNT IV
### Monopolization, Attempt to Monopolize, and Conspiracy to Monopolize
### (§ 2 of The Sherman Act)

1-31.    The allegations of paragraphs 1 through 31 of the Nature of Action, The Parties, Jurisdiction and Venue, and Background Facts sections are re-alleged as paragraphs 1 through 31 of Count IV.

**ANSWER:**    Image Media incorporates by reference its answers to Paragraphs 1 through 31, as

is set forth in full herein for Paragraphs 1 through 31 of Count IV.

32.    The relevant product market is the market for billboards or other off-site advertising structures.

**ANSWER:**     Denied.

33.     The relevant geographic market consists of the boundaries of Bellwood.

**ANSWER:**     Denied.

34.     The relevant geographical market and relevant product market herein are referred to as the "relevant market."

**ANSWER:**     No facts are alleged by Paramount in this allegations that can be admitted or denied; however to the extent any factual allegations are construed from the statements contained therein, Image Media denies such statements.

35.     Prior to the adoption of the Ordinance, Paramount was able to actively compete in leasing property, constructing and operating billboards in Bellwood.

**ANSWER:**     Image Media lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35, and therefore denies same

36.     By adopting the Ordinance, Bellwood has acquired possession of and has asserted monopoly power in the relevant market. Pursuant to the Ordinance, Bellwood has the ability to exclude competition in Bellwood in the construction and operation of billboards. Bellwood has in fact barred Paramount and all other billboard operators, except Image Media, from the relevant market. Bellwood has refused to announce bids for the lease of the Bellwood property.

**ANSWER:**     Denied.

37.     Bellwood has acted willfully in the acquisition and maintenance of its monopoly power.

**ANSWER:**     Image Media denies that Bellwood has acquired and maintained any monopoly power, and therefore denies all allegations.

38.     Because of Bellwood's anticompetitive acts, there are no alternatives for Paramount to construct and operate a billboard in Bellwood.

**ANSWER:**     Image Media denies that Bellwood engaged in any anticompetitive acts, and therefore denies all allegations.

39. Bellwood has complete discretion to allow the construction and operation of billboards, and has excluded all competition in the relevant market, securing a monopoly for itself and Image Media in controlling 100% of the relevant market.

**ANSWER:** Denied.

40. The acquisition of the monopoly in the relevant market has been secured by illegal means, and Bellwood has acted with an intention to create a monopoly.

**ANSWER:** Image Media denies that Bellwood has acquired any monopoly power, and

therefore denies all allegations.

41. Bellwood's actions constitute attempted and actual monopolization of the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER:** Denied.

42. The active participation of Image Media with Bellwood constitutes a conspiracy to monopolize the relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER:** Denied.

43. Bellwood's and Image Media's acts have produced, and unless enjoined by the Court, will continue to produce the following anticompetitive effects:

A. Competition in the relevant market has been, and will continue to be, unreasonably restrained and eliminated, and has been, and will continue to be, monopolized by Bellwood and Image Media;

B. Barriers to entry in the relevant market have been, and will continue to be, raised to levels that are insurmountable, assuring that Bellwood and Image Media will attain, maintain and increase their monopoly power; and

C. Innovation and development in the relevant market has been, and will continue to be, stifled.

**ANSWER:** Denied.

42. The activities of Bellwood and Image Media have effected the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines, particularly in regard to advertisements by national companies on the billboards.

**ANSWER:** Denied.

43.     The acts of Bellwood and Image Media have proximately caused injury to Paramount in its business and property.

**ANSWER:**     Denied.

44.     Paramount has been injured in its business and property because Bellwood, in concert with Image Media, has unlawfully foreclosed Paramount and others from competing in the construction and operation of billboards in Bellwood.

**ANSWER:**     Denied.

45.     Paramount has been substantially injured in its business and property by the acts of Bellwood and Image Media in that Paramount has lost the ability to construct a billboard on its leased Property as allowed by its IDOT permit, and the resulting loss of revenues therefrom.

**ANSWER:**     Denied.

46.     Unless restrained by the Court, such activities threaten further losses and damages to Paramount.

**ANSWER:**     Denied.

47.     There is no clearly articulated and affirmatively expressed State policy under any statute to authorize Bellwood to displace competition in the relevant market, or to establish a monopoly and extract monopoly profits for itself.

**ANSWER:**     Image Media denies that Bellwood has displaced competition or established a monopoly, and therefore it denies all allegations in Paragraph 47.

48.     Paramount has suffered irreparable injury by being precluded from competing in the relevant market.

**ANSWER:**     Denied.

49.     Bellwood is immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. § 34-36, and, therefore, Paramount has no adequate remedy at law against Bellwood.

**ANSWER:**     Image Media denies that Paramount is entitled to any damages at law or equity, and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

## COUNT V
### Conspiracy in Restraint of Trade (§ 1 of The Sherman Act)

1.-49. The allegations of paragraphs 1 through 49 of Count IV are re-alleged as paragraphs 1 through 49 of Count V.

**ANSWER:** Image Media incorporates by reference its answers to Paragraphs 1 through 49, as is set forth in full herein for Paragraphs 1 through 49 of Count V.

50. The entry of the Agreement between Bellwood and Image Media constitutes a contract, combination, or conspiracy between Image Media and Bellwood that unreasonably restrains competition in the relevant market for the business in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:** Denied.

51. This contract, combination, or conspiracy has had and will continue to have anticompetitive effects in the relevant market including reducing competition for the construction and operation of billboards and raising barriers to entry of the relevant market.

**ANSWER:** Denied.

52. The activities of Bellwood and Image Media have effected the substantial and uninterrupted flow of products, services, contracts, and claims in interstate commerce and the transfer of substantial sums of money across state lines, particularly in regard to advertisements by national companies on the billboards.

**ANSWER:** Denied.

53. The acts of Bellwood and Image Media have proximately caused injury to Paramount in its business and property.

**ANSWER:** Denied.

54. Paramount has been injured in its business and property by reason of the fact that Bellwood, in concert with Image Media, has unlawfully foreclosed Paramount and others from competing in the construction and operation of billboards in Bellwood.

**ANSWER:** Denied.

55.     Paramount has been substantially injured in its business and property by the acts of Bellwood and Image Media in that Paramount has lost the ability to construct a billboard on its leased Property as allowed by its State permit and the resulting loss of revenues therefrom.

**ANSWER:**     Denied.

56.     Unless restrained by the Court, such activities threaten further losses and damages to Paramount.

**ANSWER:**     Denied.

57.     There is no clearly articulated and affirmatively expressed State policy under any statute to authorize Bellwood to displace competition in the relevant market, or to establish a monopoly and extract monopoly profits for itself.

**ANSWER:**     Image Media denies that Bellwood has displaced competition or established a monopoly, and therefore it denies all allegations in Paragraph 57.

58.     Paramount has suffered irreparable injury by being precluded from competing in the relevant market.

**ANSWER:**     Denied.

59.     Bellwood is immune from antitrust damages under the Local Government Antitrust Immunity Act, 15 U.S.C. § 34-36, and, therefore, Paramount has no adequate remedy at law against Bellwood.

**ANSWER:**     Image Media denies that Paramount is entitled to any damages at law or equity, and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

## COUNT VI
### Declaratory Judgment that Bellwood did not have the authority to enter into the Agreement with Image Media

1-31.    The allegations of paragraphs 1 through 31 of the Nature of Action, The Parties, Jurisdiction and Venue, and Background Facts sections are re-alleged as paragraphs 1 through 31 of Count VI.

**ANSWER:**    Image Media incorporates by reference its answers to Paragraphs 1 through 31, as

is set forth in full herein for Paragraphs 1 through 31 of Count VI.

32.    Section 5/11-76-2 of the Illinois Municipal Code provides that before the corporate authorities of City or Village make a lease on real estate in excess of 20 years, they shall given notice of an intent to adopt such a lease. Further, Section 5/11-76-2 provides that "nothing in this Section prevents the corporate authorities from determining the sale or lease of property to the highest responsible bidder." 65 ILCS 5/11-76-2.

**ANSWER:**    Admitted.

33.    In effect, the Agreement contemplates leasing to Image Media the Bellwood Property for a term of 99 years.

**ANSWER:**    Image Media denies the characterization of the Agreement.

34.    Despite that, Bellwood did not have authority to lease the real estate because it did not comply with the notice-by-publication requirement of Section 5/11-76-1 of the Illinois Municipal Code.

**ANSWER:**    Denied.

35.    Paramount has a clearly ascertainable right and a protectible interest in its IDOT permit and leasehold interest in the Property.

**ANSWER:**    Denied.

36.    Because it has not complied with Illinois Municipal Code, Bellwood does not have the authority to enter into an Agreement which is intended to prevent Paramount from constructing a billboard on the Property and to ensure that Image Media will receive the necessary permits to construct a billboard on Bellwood's Property.

**ANSWER:**    Image Media denies that Bellwood failed to comply with the Illinois Municipal Code, and therefore it denies the allegations in Paragraph 36.

37.     Paramount has suffered irreparable injury.

**ANSWER:**     Denied.

38.     There is no adequate remedy at law to fully and adequately compensate Paramount as Bellwood's failure to comply with the Illinois Municipal Code constitutes irreparable injury.

**ANSWER:**     Image Media denies that Paramount is entitled to any damages at law or equity, and therefore it denies the allegations.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

## Affirmative Defenses

## First Affirmative Defense – Laches

1.     Paramount has purportedly had a lease at 1156 Bellwood Avenue, Bellwood Illinois since February 2005.

2.     On or about February 25, 2009, Bellwood passed Ordinance 9-4 (the "Prior Ordinance"), which amended Section 156.207 to ban all Billboard permits within the village of Bellwood.

2.     On information and belief, at no time between February 2005 and February 2009 did Paramount ever apply to the Village of Bellwood for a local permit to construct or operate a billboard sign.

3.     Bellwood Ordinance Section 156.207 was again amended on March 21, 2012 to permit billboard permits on property owned by the Village of Bellwood.

4.     Paramount never applied to Bellwood for a billboard permit from Bellwood after March 21, 2012.

5.     Paramount waited for until May 30, 2013, to file the instant lawsuit to protect its purported rights.

6.     For the past eight years, Paramount has knowingly slept upon its rights and acquiesced for a great length of time, without acting with due diligence to protect its rights.

7.     Paramount's delay in protecting its rights has worked to the disadvantage of Image Media, who seeks to do business with the Village of Bellwood; and in fact Image Media has tendered the highest bid to Bellwood, to either purchase an easement or lease the property commonly known as 1133-35 Bellwood Ave, Bellwood, Illinois for purposes of operating a billboard sign.

8.     Thus, for all of the foregoing reasons, all of Paramount's claims are barred by the doctrine of laches.

## Second Affirmative Defense

1.     Count I of Plaintiff's Complaint, alleging First Amendment violations, is barred by the *Central Hudson* doctrine, which permits the regulation of commercial speech. *Central Hudson Gas Electric Corporation v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343 (1980). The restrictions imposed by Bellwood through Ordinances § 156.207 and its subsequent amendments were permissible restrictions on commercial speech for the important government interest of preventing and eliminating visual blight in the Bellwood.

## ThirdAffirmative Defense

1.     Count I of Plaintiff's Complaint is also barred by the statute of limitations. While Section 1983 does not contain an express statute of limitations, the 7th Circuit has consistently held that the appropriate statute of limitations for Section 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13-202. *Ashafa v. City of Chicago*, 146 F.3d 459 (7th Cir. 1998).

**Fourth Affirmative Defense**

1.        Count II of Plaintiff's Complaint is not ripe for adjudication as Plaintiff has never applied for a billboard permit. Without a denial of Plaintiff's application, there can be no violation of Plaintiff's due process rights and, therefore, Plaintiff lacks standing to bring this cause of action.

**Fifth Affirmative Defense**

1.        Count III of Plaintiff's Complaint, alleging an equal protection claim, necessarily fails because in Plaintiff's own pleadings, it acknowledges that it and Defendant, Image Media Advertising, Inc., are direct competitors. As competitors, they are members of the same class. Thus, there is no class-based discrimination, a necessary element of a Substantive Due Process claim. *See National Advertising Co. v. Chicago, 788 F. Supp. 994 (N.D. Ill. 1991) citing Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982).*

2.        To the extent Plaintiff attempts to base its Due Process claim on a theory of "selective enforcement," Selective enforcement claims must be predicated on "purposeful or invidious discrimination[.]" *See National Advertising Co. v. Chicago*, 788 F. Supp. 994 (N.D. Ill. 1991) *citing Snowden v. Hughes*, 321 U.S. 1, 8, 88 L. Ed. 497, 64 S. Ct. 397 (1944). Erroneous, or arbitrary administration of government powers do not give rise to an equal protection claim. *Id.*

3.        Plaintiff cannot demonstrate that Bellwood engaged in purposeful or invidious discrimination against Plaintiff in any of the purported actions taken by Bellwood as alleged by Plaintiff in its Complaint. *See* Complaint, Dkt.No. 1, ¶ 35.

4.        Because Plaintiff cannot demonstrate either that it is a member of a discrete class suffering disparate treatment, or that Bellwood engaged in purposeful or invidious

### Sixth Affirmative Defense

1.     Plaintiff's claims may be precluded, in whole or in part, by estoppel or waiver.

### Seventh Affirmative Defense

1.     Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by the acts and/or omissions of persons or entities over which Defendant has no control or authority.

### Eighth Affirmative Defense

1.     Plaintiff's claims may be precluded, in whole or part, to the extent Plaintiff's damages, if any, were caused by Plaintiff's own acts and/or omissions.

WHEREFORE, Image Media preys that judgment be entered in its favor, and that it be awarded its attorney's fees, costs of suit, and any other remedies deemed just and equitable by the court.

**DEEFENDANT IMAGE MEDIA ADVERTISING, INC. DEMANDS TRIAL BY JURY.**

IMAGE MEDIA ADVERTISING, INC.

s/Daniel I. Schlade_____
One of Its Attorneys

Daniel I. Schlade (ARDC No. 6273008)
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
312-876-7100

## CERTIFICATE OF SERVICE

I, Daniel I. Schlade, an attorney, certify that I caused a true and correct copy of the attached **Answer to Complaint,** to be served on:

### *Counsel For Paramount Media Group, Inc.:*

**Ronald J. Broida**
lawyers@broida-law.com

**Joseph K. Nichele**
lawyers@broida-law.com

### *Counsel For The Village of Bellwood:*

**James Bryan Novy**
jnovy@rockfuscoconnelly.com

**John Joseph Rock**
jrock@rockfuscoconnelly.com
ajohnson@rockfuscoconnelly.com
beverly@rockfuscoconnelly.com

**Cory D Anderson**
canderson@rockfuscoconnelly.com
ajohnson@rockfuscoconnelly.com
beverly@rockfuscoconnelly.com

**Stacy Ann Benjamin**
sbenjamin@rockfuscoconnelly.com

by electronically filing the same with the United States District Court for the Northern District of Illinois on December 9, 2013.

s/Daniel I. Schlade_____
Attorney For Image Media Advertising, Inc.

24