IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARAMOUNT MEDIA GROUP, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 13 C 3994 |
| VILLAGE OF BELLWOOD, an Illinois municipal corporation, and IMAGE MEDIA ADVERTISING, INC., an Illinois corporation, | ) ) ) ) ) | Judge Jorge L. Alonso |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are plaintiff's objections to three of Magistrate Judge Cole's rulings. For the reasons stated below, the Court overrules plaintiff's objections [183, 185] to the May 28, 2015 memorandum opinion and order and the June 2, 2015 memorandum opinion and order and overrules in part and sustains in part plaintiff's objection [188] to the June 10, 2015 memorandum opinion and order.[1]

## BACKGROUND

Paramount Media Group, Inc. ("Paramount") is a company that buys and leases property, builds outdoor billboards on the property, and sells advertising on those billboards. (R. 81, First Am. Compl. ¶ 2.) Paramount brought this action against the Village of Bellwood ("Bellwood") and Image Media Advertising, Inc. ("Image Media") alleging that defendants have violated Paramount's First and Fourteenth Amendment rights and that they have conspired to restrain

---

[1]Although plaintiff also filed an objection [125] on November 7, 2014 to Magistrate Judge Cole's order of October 29, 2014 [124], plaintiff withdrew that objection in open court on June 18, 2015.

trade and monopolize the billboard market in Bellwood. Paramount also alleges that Image Media tortiously interfered with Paramount's contract with third parties to lease the property at 1133-35 Bellwood Avenue in Bellwood for the purpose of building and maintaining a billboard.

Judge Norgle, to whom this case was previously assigned, referred the case to Magistrate Judge Cole for all pretrial issues except dispositive motions. (R. 53.) Recently, the parties have conducted expert discovery and have been briefing various discovery and evidentiary disputes. On May 28, June 2, and June 10, 2015, Judge Cole issued rulings [169, 176, 182] on certain of Image Media's motions. Paramount has filed objections to those rulings.

**DISCUSSION**

**A.     Legal Standards**

As Paramount and Image Media recognize, where, as here, a district court considers timely objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's rulings will be modified or set aside only if they are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *see also Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014). Under the clear-error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

**B.     Damages Claim for a Digital Billboard**

On May 28, 2015, Judge Cole issued a memorandum opinion and order granting Image Media's motion to bar Paramount's damages claim for a digital billboard (as opposed to a static billboard). (R. 169.) Judge Cole held that Paramount failed to show that its untimely disclosure of this claim was either substantially justified or harmless.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires parties to initially disclose to the other parties, without waiting for a discovery request, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." A party must supplement its initial disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party does not follow these rules, 'the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless.'" *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) (quoting Fed. R. Civ. P. 37(c)(1)). The following factors guide the court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

This case was filed on May 30, 2013. In the complaint, Paramount alleged that defendants are "taking away Paramount's rights under its lease and IDOT [Illinois Department of Transportation] permit to construct a billboard on" the property at 1133-35 Bellwood Avenue in Bellwood (the "Property"). (R.1, Compl. at 12 ¶ 11, 35.) Attached to the complaint is Paramount's IDOT "Application for Outdoor Advertising Permit," in which Paramount checked the "Painted bulletin" box under "Description of Proposed Sign" and "Type." Another possible

3

sign type on the form that Paramount did *not* check was "Multiple Message." (R. 1-2, Compl., Ex. 2.) As Judge Cole noted, when Paramount filed its amended complaint on January 28, 2014, "nothing had changed—the sign at issue was a static one." (R. 169 at 2 (citing R. 81-2, First Am. Compl., Ex. 2).) On February 21, 2014, Paramount made its amended Rule 26(a)(1) damages disclosure, stating that in addition to declaratory and injunctive relief, it was "seeking damages in the amount of $1,678,000.00, the fair market value of the outdoor advertising sign, and its attorneys' fees and costs." (R. 151-1 at 3.) The same day, Paramount stated the same figure in response to defendants' interrogatory that asked Paramount to "[i]dentify and itemize all lost profits and monies that Paramount claims to have lost from its inability to construct and operate a billboard" on the Property. (R. 151-2 at 10 ¶ 12.) Paramount did not supplement or update its damages computation again before the close of fact discovery on August 31, 2014.

On October 20, 2014, the last day for plaintiff to disclose its expert witnesses, Paramount served a set of "Second Amended" Rule 26 disclosures that included the following addition to the $1,678,000.00 claim: "It is also believed that the present value of projected net income for a double faced 20' x 60' vinyl sign at 1133-35 Bellwood Avenue, Bellwood, Illinois is $3,611,173.00 and for a double faced 20' x 60' digital sign is "$13,993,808." (R. 151-3 at 3.) This set of disclosures was served in conjunction with the Amended Report of plaintiff's president and CEO, David Quas. (R. 121, Pl.'s Resp. Image Media's Mot. Bar Evidence at 4-5.) Evidently, the first mention of a digital billboard in this case had occurred in Quas's original report of March 13, 2014, where he had stated as follows regarding damages:

> In my opinion, based on my experience of owning and operating billboards, that [sic] a billboard structure and two 20'X60' advertising faces generate approximately $7,500 net per face per year at 70% occupancy (which is an industry average) or $180,000 in gross revenues per year . . . . [After accounting

4

for certain itemized expenses,] it is my belief that the expected profits from the sign each year would be $105,180.00.

    Further, in my opinion of [sic] the fair market value of the outdoor advertising will be approximately $1.6 million and could be significantly more if a digital billboard space is installed. Current revenues for a digital face in this location should total $470,000.00 per year. This is based on my over 20 years of experience selling and purchasing billboards in the Chicagoland area.

(R. 183-1, Paramount's Objection, Ex. 1, Quas Report 3.) In contrast, Quas's October 20, 2014 amended report states as follows in pertinent part:

In my opinion, based on my experience of purchasing, selling, owning and operating billboards, a double sided 20'X60' vinyl sign located at 1133-35 Bellwood Avenue, Bellwood, Illinois should produce income with a net present value of $3,611,673[2]. . . .

    Also, in my opinion, based on the same calculations and analysis, the net present value of projected net income of a double faced 20' X 60' structure with a digital display would be $13,993,808. . . .

(R. 183-2, Paramount's Objection, Ex. 2, Am. Quas Report 3.)

On October 24, 2014, Image Media moved to bar as untimely, among other things, the new damages claims set forth in Paramount's October 20 disclosures. (R. 119.) Judge Cole denied the motion without prejudice because it was unclear at that point whether the recent damages assertion was merely an updated calculation or an entirely new theory. (R. 124.) Judge Cole indicated that the matter could be revisited after Paramount's experts were deposed. (*Id.*; R. 145, Tr. of 10/29/14 Hr'g 47.)

Subsequently, on March 31, 2015, Image Media brought a renewed motion to bar the $13,993,808 damages claim for a digital sign. In his memorandum opinion and order granting the motion, Judge Cole found that Paramount was asserting a new damages theory based on undisclosed facts. Expert discovery confirmed this; aside from Quas, Paramount's experts were

---

[2]This figure is $500 more than the corresponding figure set out in Paramount's second amended disclosures.

5

unaware of plans for a digital sign and were not asked to opine on the value of such a sign. Judge Cole noted that Paramount offered no excuse for not having disclosed its "huge" digital-sign damages assertion until near the close of expert discovery:

> [Paramount] does not say that when disclosures were made, it had not "fully investigated" its case; but there can be no other explanation, and, under Rule 26(a)(1)(E), that's unacceptable. If, as Paramount claims, it had the idea about a digital sign all along, it's even worse (and more indicative of intentional concealment) that its disclosures failed to address the damages related to such a sign. It had no problem, at the time, calculating damages for a static sign. The evidence is clear: the claim for a digital sign is clearly new, a Trojan horse smuggled in at the eleventh hour.

(R. 169, Mem. Op. & Order at 6.) Judge Cole also found that Paramount failed to show that its untimely disclosure of a new damage theory was either substantially justified or harmless, as required by Rule 37(c)(1). (*Id.* at 6-7.)

Paramount first contends that its damages computation for a digital billboard is not a "bombshell" or "surprise" because "Quas' opinion regarding the estimated revenue of a digital billboard was disclosed well before the August 31, 2014 fact discovery cut-off." (R. 183, Pl's Objection at 6.) Paramount asserts that the $13,993,808 claim was a "recalculat[ion] at a net present value" and an "updated calculation of damages previously disclosed in Quas' original report." (*Id.*) The Court rejects these characterizations. As Judge Cole correctly pointed out, Quas's reference in March to "a digital billboard space" was a "casual aside." It was not a computation and cannot even be called an "opinion." Quas used the noncommittal words "could" and "should," referred to a single "digital face," not a double-faced structure, and provided no indication whatsoever that plaintiff was claiming nearly $14 million in damages.

Paramount also contends that its damages calculation for a digital billboard "is an alternative measure of compensatory damages and is relevant to punitive damages." (*Id.* at 5.)

6

Paramount made a similar throwaway statement about punitive damages before Judge Cole and continues to repeat it. But Paramount fails to explain, and the Court does not see how, the claim for a digital billboard is "relevant to punitive damages." And whether the claim is an "alternative measure of compensatory damages" is not the salient issue; it is whether this computation was disclosed in a timely manner. It was not. This Court agrees with Judge Cole's "Trojan horse" assessment of Paramount's claim. Although Paramount maintains that its claim was "not new," it cannot cite any point prior to the close of fact discovery at which it claimed $13,993,808 or anything in that ballpark in damages. And it provides no excuse for this failure. As Judge Cole stated, if Paramount "was able to do the calculation for static sign damages in a timely fashion, it ought to have been able to provide a similar calculation for a digital sign." (R. 169, Mem. Op. & Order at 5-6.) Pursuant to Rule 26(a)(1)(E), "[a] party is not excused from making its disclosures because it has not fully investigated the case."

Paramount's disclosure of its damages computation based on a digital sign was untimely. Therefore, it is barred from proceeding on its claim for that category of damages unless it can show that its failure to timely supplement its disclosures was harmless or substantially justified. Judge Cole concluded that with no explanation for what took so long, Paramount failed to show substantial justification. (R. 169, Mem. Op. & Order at 6.) And Paramount did not argue that its tardiness was harmless. (R. 154.) Paramount has also failed to explain to this Court what took so long. As for harmlessness, Paramount presents a two-sentence argument that Image Media "had ample opportunity to explore the updated calculation in expert discovery, through written expert discovery and the deposition of Quas," which took place after the October 2014 disclosures. (R. 183, Pl.'s Objection at 8.) But this argument fails to recognize that *fact* discovery had closed two months prior to plaintiff's disclosure, and defendants would

undoubtedly have pursued a great deal of discovery relating to the disclosure had it been made during the fact-discovery period. It is no answer to say that defendants were able to depose Quas about it. Paramount has not demonstrated an absence of prejudice to defendants stemming from its inexcusable failure to comply with Rule 26. Judge Cole's ruling was not clearly erroneous, so the objection is overruled.

**C.     Expert Testimony**

On June 2, 2015, Judge Cole granted Image Media's motion to bar Quas's testimony and that of another of Paramount's experts, Rodolfo Aguilar, pursuant to Rules 26(a)(2)(B) and 37(c)(1). (R. 176.)

Rule 26 provides that the disclosure of a party's expert witness's identity must be accompanied by a written report, prepared and signed by the witness, that must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Failure to comply with these disclosure requirements results in exclusion of the proffered witness, unless the failure was substantially justified or harmless, as outlined above. *See, e.g.*, *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 972 (7th Cir. 2015).

1. **David Quas**

Image Media moved to exclude Quas on the grounds that his amended report fails to disclose that a third party named David Wiegman, and not Quas himself, is actually the author of his opinions, and the report fails to disclose the factual bases for the estimate to construct Paramount's proposed sign. (R. 149 at 3.) After reviewing Quas's deposition testimony and concluding that he was no more than a "mouthpiece" for Wiegman, (R. 176, Mem. Op. & Order at 3), who did the real work constructing a spreadsheet and calculating the present value of future income for a billboard, Judge Cole granted Image Media's motion.

Paramount maintains that Quas's amended report complies with Rule 26 because Quas provided some of the underlying data that was inputted into Wiegman's spreadsheet and "did not testify that all the work was done by" Wiegman. (R. 185, Pl's Objection at 6.)[3] In Paramount's view, Wiegman's spreadsheet was "the 'calculator' [to] do the math, but the substance came from Quas who has over 20 years of experience in the billboard industry." (*Id.*) Paramount also argues that Quas's report "states his opinions and the basis for each of his opinions." (*Id.* at 7.)

The Court disagrees. Quas's report does not comply with Rule 26 because it fails to provide the bases for Quas's opinions and the facts and data considered by Quas and it fails to disclose Wiegman's role. Quas states merely that his "calculation was determined with the assistance of a spreadsheet to perform a pro forma of projected revenues/expenses and net income. The spreadsheet is accepted and commonly used within the industry to determine net present value and is utilized, for example, by Clear Channel Outdoor." He states that the

---

[3]Although Paramount argues in a circular fashion that Image Media "cannot be said to be harmed" because Quas's report complied with Rule 26, it does not argue except in a conclusory fashion in its reply that even if Quas's report did not comply with Rule 26, the failure to comply was substantially justified or harmless. (R. 185, Pl.'s Objection at 7; R. 198, Pl's Reply at 5.)

calculation used an occupancy rate of seventy percent, "the industry average," and that it took inconsideration the expenses for the lease, electric, vinyl install, vinyl production and construction" and "utilized a 5% interest rate to discount the net revenue to the net present value," and stops there. (R. 185-2, Am. Quas Report at 2-3.)

Attached to Quas's report is a spreadsheet that shows the damages calculations for the $3,611,673 net present value for a static billboard and $13,993,808 net present value for a digital billboard. (*Id.* at 4-12.) At his deposition, Quas stated that he had never previously calculated, by using a spreadsheet, the net present value of future income from a sign. (R. 185-3, Dep. of David Quas 99-100.) When asked what the two numbers ($245,000 and $750,000) on the spreadsheet that appear next to the "cashflow" amount represent, Quas testified that he did not know. (*Id.* 72, 91.) Quas testified that Wiegman created the spreadsheet, chose the five percent discount rate, and input the remainder of the data (such as construction costs and expenses), which Quas gave him. (*Id.* 75-76, 94, 99-100.) Quas acknowledged that his report did not disclose Wiegman's involvement, the bases for the "construction cost" item in the spreadsheet, or that Quas had relied upon (1) another of plaintiff's experts, Gerald Page, to compute the construction cost of a static billboard; (2) a 2012 quote for a digital billboard from a company called Formetco to compute the construction cost of a digital billboard; or (3) the "Barclays Out of Home Market Report" to calculate projected gross revenue. (*Id.* 72-76, 81-83, 84-85.) Moreover, Quas testified that when he stated that "[t]he spreadsheet is accepted and commonly used within the industry to determine net present value," he was not referring to the formulas used in the spreadsheet and meant only that the Microsoft Excel program is accepted and commonly used in the industry to create spreadsheets. (*Id.* 68-71.)

The Court agrees with Judge Cole that Quas did not simply base his opinion on Wiegman's work; rather, he adopted it and parroted Wiegman's opinion. (R. 176, Mem. Op. & Order at 5.) The fact that Quas supplied some of the data to Wiegman does not make the calculations and opinion his own. Moreover, the amended report does not disclose where many of the numbers come from that are considered in the calculation. And it is not sufficient for the report (or plaintiff's objection, for that matter) to simply cite Quas's years of experience in the billboard industry and leave it at that. *Cf.* Fed. R. Evid. 702 advisory committee's note to 2000 amendments ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

Paramount has not demonstrated that Judge Cole clearly erred in barring Quas's testimony.[4] This objection is thus overruled.

2. **Rodolfo Aguilar**

Paramount retained Rodolfo Aguilar (who is a real estate appraiser, architect, and professional engineer) to provide an appraisal of the market value of a static billboard. (R. 185-4, Aguilar Report at 2, 8.) Image Media moved to exclude Aguilar because he fails to provide in his report a list of all publications he has authored in the past ten years and a list of all other cases in which he testified as an expert at trial or by deposition in the past four years, as required by Rule 26(a)(2)(B)(iv) and (v), and because the report fails to disclose the bases for Aguilar's

---

[4]Paramount contends that a "complete bar" of Quas's testimony and amended report is not warranted. (R. 185, Pl's Objection at 7; R. 198, Pl.'s Reply at 5.) But Rule 37 allows the Court to exclude *the witness*, not merely parts of his testimony or certain evidence, if the failure to comply with Rule 26 is without substantial justification and not harmless. *See Novak*, 777 F.3d at 972; *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 726 (7th Cir. 2006).

opinions and the facts or data considered in forming them, as required by Rule 26(a)(2)(B)(i) and (ii). Judge Cole granted the motion.

Aguilar does not provide a list of cases in which he testified; rather, he merely provides under the heading "Expert Witness Testimony" a list of judges and their chambers addresses with no other information. (R. 185-4, Aguilar Report at 94-105.)[5] Furthermore, he does not provide a list of all publications he wrote in the past ten years, but only a list of "publications and presentations in this field" ("this field" evidently referring to the valuation of billboards), plus two older textbooks, a "monthly column," and "sixty-one [unspecified] journal articles and monographs." (*Id.* at 91-92, 105.)

Paramount argues that Aguilar cannot provide case names because he "does not keep track of that information" and that he has thus complied with Rule 26 "to the best of his ability." (R. 185, Pl.'s Objection at 7-8.) It submits that in the event the Court determines that Aguilar has not complied with Rule 26, non-compliance was justified because "he has provided all the information contained in his records." (*Id.* at 8.) Although it was Aguilar's testimony that he does not keep information about cases in which he was deposed but did not testify at a hearing, and not about *all* cases in which he participated, (R. 185-5, Dep. of Rodolfo Aguilar 24), the Court will assume that Aguilar does not keep track of any case names.

Aguilar's failure to keep records of the names of cases in which he has testified at trial or deposition does not demonstrate substantial justification. *See, e.g.*, *Wallace v. Hounshel*, No. 1:06-CV-01560-RLY-TAB, 2008 WL 2184907, at *3 (S.D. Ind. May 22, 2008) (rejecting the

---

[5]At his deposition, Aguilar added that his list does not include judges presiding over cases at which he provided deposition testimony but did not testify at any court proceeding. (R. 185-5, Dep. of Rodolfo Aguilar 23-24.)

same argument and stating that "[i]gnoring the rule and allowing [defendants' expert] to testify would reinforce Defendants' failure to follow the rules and would lower the bar for other experts.") (citing *Norris v. Murphy*, No. Civ. A. 00–12599–RBC, 2003 WL 21488640, at *3 (D. Mass. June 26, 2003) ("An expert cannot deliberately put himself or herself in a position where it is impossible to comply with a rule and then claim that he or she cannot comply. Self-induced inability to comply with a rule is simply not justified.") and *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995) ("An expert's failure to maintain records in the ordinary course of his business sufficient to allow the disclosures to be made does not constitute 'substantial justification' for the failure to provide required disclosures as to any retained expert expected to testify at the trial of the case.")). Paramount contends that the list of judges and their addresses provided in Aguilar's report is not "useless," as Judge Cole found, because while knowledge of the case names may lead to the discovery of inconsistent opinions, that "should not be a concern here" because Aguilar is "providing an appraisal with respect to a specific site" and "prior inconsistency should not be an issue." (R. 185, Pl.'s Objection at 8.) Paramount's view that inconsistency "should not be a concern" is neither here nor there (not to mention something that the Court would expect a party to say about its own expert). As Judge Cole explained, defendants are entitled to explore Paramount's experts' prior testimony to attempt to uncover inconsistencies between the opinions they intend to express in this case and the opinions expressed in other cases. *See, e.g.*, *Brown v. Overhead Door Corp.*, No. 06 C 50107, 2008 WL 1924885, at *1 (N.D. Ill. Apr. 29, 2008). Paramount does not get to pick and choose which of Rule 26's requirements it wishes to comply with, so its arguments are rejected.

Judge Cole also found that Aguilar's testimony should be barred because Aguilar did not disclose all the facts or data he considered in arriving at his conclusions. (R. 176, Mem. Op. &

13

Order at 8-11.) Aguilar's "cost approach" analysis of market value involved a determination of billboard construction costs, and Aguilar admitted at his deposition that although he had relied on data that he has accumulated over the years in making this determination, he did not provide that underlying data, nor did he have a record of what data he had relied upon. (R. 185-5, Aguilar Dep. 95-97.) Moreover, when asked whether he had provided the underlying data, Aguilar replied, "No. Please let me explain that I am an architect and also an engineer, so I have, you know, some expertise in this." (*Id.* 97.) As the Court explained with respect to Quas, an expert cannot simply fall back on his experience when he acknowledges that he relied on particular data in forming an opinion yet fails to disclose that information.

Paramount characterizes the bases on which Judge Cole excluded Aguilar as a witness as "hyper-technicalities." (R. 185, Pl's Objection at 10.) The Court is unpersuaded. Judge Cole did not clearly err in barring Aguilar, so the objection is overruled.

D. **Rebuttal Expert Reports**

On June 10, 2015, Judge Cole granted Image Media's motion to bar Aguilar's rebuttal report as well as that of Gerald Page, another of Paramount's experts. (R. 182.) Judge Cole agreed with Image Media that Paramount's disclosure of the two rebuttal reports on April 24, 2015 violated the agreed-upon expert discovery schedule, which made no provision for rebuttal reports, and that the reports were not genuine rebuttals. The Court will consider each issue in turn. Paramount's objection is moot with respect to Aguilar's rebuttal, however, because the Court has adopted Judge Cole's recommendation to exclude Aguilar as an expert witness altogether.

Rule 26(a)(2)(D) provides that "[a]bsent a . . . court order," a party must make rebuttal expert disclosures "within 30 days after the other party's disclosure." Although Paramount

14

served its rebuttal reports within this time period, Judge Cole ruled that they must be barred because Paramount chose to leave the possibility of rebuttal reports unaccounted for in the parties' proposed scheduling order and it was bound by this "tactical decision" of its attorneys. (R. 182, Mem. Op. & Order at 4-6.) In its response to Image Media's motion, Paramount cited decisions in which courts allowed the filing of rebuttal reports even though their discovery schedule did not originally allow for them. Judge Cole distinguished all of them but one and noted that the parties in most of those cases had not structured their own discovery. He declined to follow the remaining decision, *McAtee v. Buca Restaurants, Inc.*, No. 1:10–cv–1090–SEB–DKL, 2011 WL 4861867 (S.D. Ind. Oct. 13, 2011), because it is not binding and the court did not discuss all of the specific language of Rule 26(a)(2)(D).

In *McAtee*, the court denied the defendant's motion to strike a rebuttal report that was timely disclosed in accordance with Rule 26(a)(2)(D) and found that the report was a proper rebuttal. The court initially noted that "although the parties' Case Management Plan set deadlines for the parties' initial disclosures and reports required under Rule 26(a)(2)(B), it did not provide a deadline for disclosing rebuttal expert witnesses." 2011 WL 4861867, at *1. The court continued: "Absent a stipulation or a court order regarding the time at which a rebuttal expert must be disclosed, Rule 26(a)(2)(D) provides that where 'the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C),' such disclosures must be made 'within 30 days after the other party's disclosure.'" *Id.* Because plaintiffs had disclosed their rebuttal witness within the thirty-day period, the court reasoned that the only question was whether the testimony was truly a rebuttal. *Id.*

15

The Court agrees with *McAtee*'s approach. There was no stipulation or court order in this case regarding rebuttal reports. That might have been a tactical decision by counsel, but it might have been an oversight. Furthermore, Rule 26 does not distinguish between cases in which the parties proposed an expert discovery schedule and those in which the court entered its own schedule.

That leaves the question of whether Gerald Page's rebuttal report consisted of "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified" in Image Media's expert witness reports, Fed. R. Civ. P. 26(a)(2)(D)(ii), keeping in mind that "[t]he rebuttal expert report is no place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005).

Page's rebuttal, (R. 188-5), states that it is intended to respond to the report of Ted Bratsos, who opines, among other things, that Paramount's proposed sign as reflected on its February 2014 Site Plan cannot be constructed as designed because the sign column would have to "pass through" the overhanging eaves of the adjacent building. (R. 188-3, Bratsos Report at 2-3.) Judge Cole focused on the section of Page's report that states as follows:

> The placement of the column in relation to the building will be dictated by the engineering design and the foundation of that design and this will place the steel column itself outside of the building overhang. The steel pipe column is almost always a smaller size than the concrete foundation itself and this will dictate the placement. The building footing of the existing foundation will also be a factor and those combined parameters will dictate the column placement.

(R. 188-5, Page Rebuttal Report at 1.) Page concludes, however, that "this entire sign structure can be fabricated and constructed as designed, on this particular site, without any undue

16

influence on the existing building or foundation, and without affecting window sight lines, ventilation, or building integrity." (*Id.* at 2.)

The language in the block quote above is waffling, and, as Judge Cole correctly concluded, a new opinion that contradicts Page's ultimate conclusion. But instead of barring the entire rebuttal report, the Court will strike the quoted paragraph. Accordingly, the Court overrules in part and sustains in part Paramount's objection to the ruling barring the rebuttal expert report of Gerald Page. The third paragraph of Page's rebuttal report is stricken, but the remainder of the report is not barred.

**E.     "Animus"**

As a final matter, the Court must address the statement made by Paramount's counsel in one of its objections that Judge Cole "appears to have an animus against Paramount and its attorneys, which, respectfully, is unwarranted." (R. 185, Pl.'s Objection at 8.) It is counsel's statement that is unwarranted. Counsel provide no reasoning and no evidence for their assertion; they simply insinuate an "animus" from the fact that Judge Cole has repeatedly ruled against them. "'Allegations of judicial bias are very serious and should never be cast without substantiation.'" *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1101 (7th Cir. 1992) (quoting *Matter of Wade*, 969 F.2d 241, 243 n.1 (7th Cir. 1992)). "Adverse rulings do not demonstrate bias." *Messner v. Calderone*, 447 F. App'x 725, 725-26 (7th Cir. 2011) (citing *Liteky v. United States*, 510 U.S. 540 (1994)). Paramount's assertion of bias is frivolous.

**CONCLUSION**

For the reasons explained above, the Court overrules plaintiff's objections [183, 185] to Magistrate Judge Cole's May 28, 2015 memorandum opinion and order and June 2, 2015

17

memorandum opinion and order and overrules in part and sustains in part plaintiff's objection [188] to the June 10, 2015 memorandum opinion and order.


**SO ORDERED.**  ENTERED: September 10, 2015

_____
**JORGE L. ALONSO**
**United States District Judge**