# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PARAMOUNT MEDIA GROUP, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 13 C 3994 |
| v. | ) ) | Judge Jorge Alonso |
| VILLAGE OF BELLWOOD, an Illinois municipal corporation, and IMAGE MEDIA, an Illinois corporation, | ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff has moved to bar the testimony of three of defendants' expert witnesses, Michael MaRous, Christopher Stark, and Ted Bratsos. This motion is the latest installment in a series of disputes over expert testimony in this case, which involves the construction of a billboard in a parking lot. *See Paramount Media Group, Inc. v. Village of Bellwood*, 2015 WL 3622768 (N.D.Ill. 2015); *Paramount Media Group, Inc. v. Village of Bellwood*, 308 F.R.D. 162 (N.D.Ill. 2015); *Paramount Media Group, Inc. v. Village of Bellwood*, 2015 WL 3419831, at *1 (N.D.Ill. 2015).

The plaintiff originally filed its motion in June, but at that time, there were other expert witness motions pending before Judge Alonso, and it was thought that his rulings on those motions would resolve, or at least affect, some of the issues in the plaintiff's June motion. [Dkt. # 191]. Thus, the motion was stricken without prejudice. Judge Alonso has since ruled, and, indeed, his ruling has affected some of the issues plaintiff presented in its original motion. But, the plaintiff chose to simply refile its June motion without making any changes in the wake of those rulings, completely

ignoring the minute order of July 1, 2015, [Dkt. #191] and Judge Alonso's opinion of September 10, 2015. Ignoring it, that is, until it filed its reply memorandum, which raised all sorts of issues that could and should have been raised in the opening brief.[1]

Raising material in a reply brief that ought to have been raised in an opening brief is inappropriate. "A reply brief is for replying, not for raising a new ground . . . ." *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987)(Posner, J., concurring). The courts have characterized this tactic in a variety of ways – all negative. Blind-siding, gamesmanship, and sandbagging are the most commonly used epithets. Regardless of the name applied, the stratagem has no place in the judicial system. *Cf., United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976)(condemning "gamesmanship in getting the last word"); *Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999). And for obvious reasons. Loading-up on a reply brief effectively results in a one-sided presentation, which is inconsistent with the very premise on which the adversary system is based. *See Commonwealth Edison Co. v. U.S. Nuclear Regulatory Commission,* 830 F.2d 610, 621 n. 7 (7th Cir.1987). In addition to being unfair to one's opponent, the tactic of saving the best for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. *Cf., Adamson v. California*, 332 U.S. 46, 59 (1946)(Frankfurter, J., concurring). *Compare United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993); *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc*., 800 F.3d 853, 858 (7th Cir. 2015); *Burdett v.*

---

[1] The July 1, 2015 Minute Order stated that given the pendency of issues pending before Judge Alonso, "for the sake of judicial efficiency, the plaintiff's current motion [Dkt. # 172] is stricken without prejudice to refiling in the wake of Judge Alonso's resolution of the pending matters."

*Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992).[2]

To insure that a party is not impermissibly affected, a court must either invoke the waiver doctrine[3] or allow the filing of a surreply. *Beard v. Seagate Technology*, 145 F.3d 1159 (10th Cir. 1998); *Commonwealth Edison v. U.S. Nuclear Regulatory Commission*, 830 F.2d 610, 621 (7th Cir. 1987); *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002). Neither course is particularly attractive: the former penalizes (permissibly) the client for his lawyer's misconduct, while the latter results in an additional and needless expenditure of judicial resources. The shortness of life imposes constraints on the amount of time that a judge has to devote to any given problem. Surreplies necessitated by inappropriate reply briefs take time away from other litigants who are waiting their turn in the endless queue of cases. *Compare Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987); *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir.2015); *Northern Border Pipeline Co. v. 64.111 Acres of Land in Will County, Illinois*, 344 F.3d 693, 695 (7th Cir.2003); *Sommerfield v. City of Chicago,* 613 F.Supp.2d 1004, 1005 (N.D.Ill. 2009).

To date, the parties have filed nine motions regarding expert discovery. Briefing has been, to say the least, extensive. The parties have filed no fewer than eighteen briefs on expert discovery, totaling more than 170 pages, not to mention over 1700 pages of exhibits. With each dispute, the parties also get two bites at the apple, one before me and then another before Judge Alonso by way

---

[2] Justice Brandeis said it best: "A judge rarely performs his functions adequately unless the case before him is adequately presented." *The Living Law*, 10 Ill.L.Rev. 461, 470 (1916). Adequate presentation obviously demands that each side has a meaningful opportunity to be heard.

[3] Arguments raised for the first time in a reply brief are often deemed waived. *United States v. Cruse*, 2015 WL 6688079, at *17 (7th Cir.2015);*United States v. Kennedy,* 726 F.3d 968, 974 n.3 (7th Cir. 2013); *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013); *Dexia Credit Local v. Rogan,* 629 F.3d 612, 625 (7th Cir. 2010).

3

of objections. That's more than sufficient in a case about the construction of a bill board in a parking lot. There may be cases in which allowing a surreply is the best course of action, but this isn't one of them. *See University Healthsystem Consortium v. UnitedHealth Group, Incorporated*, 68 F.Supp.3d 917, 922 (N.D.Ill. 2014)("denial of a motion to file a surreply is appropriate when the movant has had the opportunity to thoroughly brief the issues."). Waiver is the more appropriate remedy. All new material raised in plaintiff's reply brief is stricken and will play no part in the resolution of this current expert discovery dispute.

The defendants engaged Mr. MaRous to provide a critique of the report of plaintiff's expert, Dr. Rudolph Aguilar, and nothing more. (Dkt. # 190, at 3). Judge Alonso has since stricken Dr. Aguilar's report and barred his testimony. (Dkt. # 200, at 11-14). And so, Mr. MaRous's report is no longer relevant and should be stricken, and he need not testify. Similarly, Section III of Mr. Stark's report, which is also a critique of Dr. Aguilar's conclusions (Dkt. # 172-2, at 16-19), is not necessary and should be stricken and such testimony barred. The same goes for Section IV of Mr. Stark's report, which is directed at the report from plaintiff's expert, David Quas. (Dkt. #172-2, at 19-20). Judge Alonso has stricken that report and barred his testimony. (Dkt. # 200, at 9-11). All that remains to be addressed are plaintiff's problems with Ted Bratsos's report and the remainder of Mr. Stark's report.

**Ted Bratsos**

The plaintiff contends that Mr. Bratsos is not qualified to render certain opinions expressed in his report, namely that: (1) "placing a column that close to the building will also put a lot of pressure on the foundation of the building," and it does not appear that Paramount had done what was necessary "to determine the deflection in the column pipe under full loads in order to make sure

4

that it will not bump against the building doing further damage"; (2) there is a concern that "the column blocking the windows of the basement apartment as well as the upper level apartment, and whether the fire code would allow the column to block those windows"; and (3) plaintiff could not erect a digital billboard without an IDOT permit. This last issue has been disposed of by Judge Alonso, as he has ruled that a digital billboard is not part of this case. (Dkt. #200, at 6-8).

The other two points are certainly matters of concern. The defendants submit that Mr. Bratsos is qualified to testify on all these points based on his background and experience:

> [Mr.] Bratsos has worked in the billboard sign industry for thirty-five years. (*See* Bratsos Report (Dkt. # 172-3) at p. 1.) He has experience as a sign fabricator, a production manager, an installer and a field foreman. (*Id.*) Additionally, he has had experience in welding, sign design, drafting, crane operation, site inspection and sign construction. (*Id.*) He has held various positions within the billboard industry and teaches classes on billboard installation, maintenance and safety. (*Id.*)

(Dkt. # 190, at 10).

But the question is how do those qualifications relate to the opinions at issue? An impressive resume is not a guarantor of relevancy. A court must ensure that the expert testimony at issue "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993); *Trustees of Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir.2007). The expert's opinion must "fit" the case, and his *ipse dixit* that it does is never enough. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). "Stephen Hawking would be a stunning witness in a case involving theoretical physics, but would never see the light of day in an accounting malpractice case." *Davis v. Duran*, 277 F.R.D. 362, 368 (N.D.Ill.2011).

5

As Judge Alonso pointed out, "[i]f the witness is relying solely or primarily on experience, then the witness must *explain how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts." (Dkt. #200, at 11 (quoting Fed.R.Evid. 702 (advisory committee notes (2000)))). "[I]t is not sufficient . . . to simply cite [Mr. Bratsos's] years of experience in the billboard industry and leave it at that." (Dkt. #200, at 11). The defendants have done nothing more than that here, and as proponents of Mr. Bratsos's testimony, it is their burden to prove he is qualified under *Daubert* and Fed.R.Evid. 702. *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). They've clearly failed to meet that burden with respect to Mr. Bratsos.

We aren't trying to be hyper-technical. It's not obvious that a person with experience in construction and maintenance of billboards would have knowledge about stresses on buildings and their foundations. While Mr. Bratsos designs the billboards, he needs an engineer – he's not one – to run all the calculations for him. (Dkt. # 172-8, at 6 (Bratsos Dep., at 16). He concedes that the type of analysis necessary to determine whether the pressure from the column would damage the foundation of the building would have to be done by an engineer. (Dkt. # 172-8, at 13 (Bratsos Dep., at 42-43).

As for his fire code issue, he has no idea whether such a fire code is in effect at the site of the billboard in this case. (Dkt. # 172-8, at 13 (Bratsos Dep., at 44). Hence, he's offering no more than speculation, and that, he cannot do. *In re TMI Litigation*, 193 F.3d 613, 670 (3rd Cir. 1999)("We note that in order for expert testimony to be reliable, and therefore admissible, it must be based on the methods and procedures of science rather than subjective belief or speculation."). Indeed, "the idea that speculation can be employed as a substitute for proof" has long been rejected throughout the

range of the law. *See United States v. Landry,* 257 F.2d 425,431 (7th Cir.1958). *Accord, In re Cohen,* 507 F.3d 610, 614 (7th Cir.2007) (speculation is not evidence); *Louth v. McCollum,* 424 F.3d 631, 634 (7th Cir.2005) ("hypothesis is not proof"). By requiring that an expert rely on "facts and data" and by requiring proof that he "knows of what he speaks,"*Cummins v. Lyle Indus.,* 93 F.3d 362, 367–68 (7th Cir.1996), Rule 702 prohibits speculation *by experts. See also Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771-72 (7th Cir. 2014). Hence, the two opinions discussed above must be stricken from Mr. Bratsos's report, and his testimony on those subjects must be barred.

**Christopher Stark**

What's left of Mr. Stark's report after Judge Alonso's rulings raises some issues for the plaintiff – and for the court. First, Mr. Stark explains that there are three methods for determining the value of a business – in this case, a billboard – the income approach, the cost approach, and the market approach. He discards the income approach because he finds it too subjective. He says that different purchasers will have different perspectives on risk/costs in a particular area. He doesn't explain why that fails to capture the reality of the market which, of course, includes and is driven by these differing perspectives; but there it is. (Dkt. # 172-2, at 5). Confusingly, at his deposition, he testified that he *did* use the income approach, but "not in the traditional way." (Dkt. #172-6, at 8 (Stark Dep., at 23, 25)). He has no time for the cost approach because "value of outdoor advertising assets is significantly higher than the cost to develop those assets." He favors the market approach – analysis of recent sales and offering prices of such properties as the best method of determining the fair market value of an outdoor advertising asset. It's a rather uncontroversial stance to take up to that point. (Dkt. # 172-2, at 5).

His input into the market approach is his confidential, proprietary database. (Dkt. # 172-2, at 5, 28). But we don't know what's in that database, and that's the first thing that understandably and justifiably raises the plaintiff's antennae. Secrecy is not congenial to truth-seeking. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171 (1951)(Frankfurter, J., concurring). And so, a secret database on which any expert relies for an opinion is impermissible. *Cf., Snodgrass v. Ford Motor Co.*, 2002 WL 485688, at *10 (D.N.J. 2002) ("If the database is not an accurate portrayal of what it purports to be – namely, a compilation of actual incidents of fires caused by ignition switches-then Dr. Moshman's use of this database, which assumes the conclusions of ignition switch fires to be accurate, is methodologically unsound.").

Plaintiff's own expert, Dr. Aguilar, was barred because he based his opinion on his own accumulated data that he did not provide – he didn't even have a record of it. (Dkt. # 200, at 14). Mr. Stark is in a little better situation. He at least claims to have an actual database, but claimed he could not divulge its contents due to confidentiality agreements he said he had with his clients. (Dkt. # 172-6, at 7 (Stark Dep. at 18-21)).

The defendants – as the proponents of this testimony – have the burden of demonstrating it passes muster under *Daubert* and Fed.R.Evid. 702 *et seq. Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). They claim that the data at issue is disclosed in Exhibit B to Mr. Stark's report. (Dkt. # 190, at 5; Dkt. #172-6, at 7 (Stark Dep. at 19)). There, Mr. Stark indicates he looked at four properties from his confidential database as comparators for the site at issue here. (Dkt. # 172-2, at 23). But the revelation of these four sites is not the answer to the dispute, because the question remains what sites did he leave out and why. His confidential database could include a slew of sites in the area that are comparable. The suspicion – and the possibility – will be that he chose

the ones that best supported the defendants' case. To dispel that concern, *Daubert* demands that all that data be revealed. Perhaps Mr. Stark's selection process was as fair and impartial as one could imagine. But *Daubert* does not require that the plaintiff accord his word the weight of an encyclical. Quite the contrary. *Daubert* requires that there be a meaningful opportunity for cross examination. 509 U.S. at 580. Permitting an expert to withhold the basis for his testimony is antithetical to that requirement and to the most fundamental notion of fairness. *Cf. Wenk v. O'Reilly*, 2014 WL 1121920 (S.D.Oh. 2014)("if the law makes all of these materials drafts, a substantial portion of the expert's actual thought process will be shrouded in secrecy, and opposing parties will have to rely on the expert to recount that process fully and truthfully without having the means to test the expert's narrative through contemporaneously-created notes.").

Moreover, according to his deposition testimony, Mr. Stark didn't confine himself to the four sites listed in his Exhibit B. He testified that he used not four, but *twenty-three* sites in his analysis. (Dkt. # 172-6, at 10 (Stark Dep., at 32-33)). The data underlying Mr. Stark's work – in addition to the fact that it has thus far been undisclosed – is a real problem. But, it is one that is to be addressed at trial through cross-examination. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012); *see also Manpower, Inc. v. Insurance Co. Of Pennsylvania*, 732 F.3d 796, 807 (7th Cir. 2013)("The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed."). The manner in which Mr. Stark selected his comparators could well scuttle his testimony, but it won't get that far.

That's because things get even flimsier from here. Next, there is the matter of Mr. Stark's methodology. As already noted, he selected the market approach as the best method for determining

9

the fair market value of an outdoor advertising asset. But then he strays from that approach and uses his own valuation matrix, which he calls a scoring system that assesses the subject property's fifteen "value drivers" and then he compares that to the historic asset sales transactions – the transactions from his secret database. (Dkt. # 172-2, at 6-7). Mr. Stark bases his selection of the fifteen value drivers on his "experience in financing and representing sellers of billboard assets, negotiating with buyers and knowing what key elements help determine what purchase price they apply." (Dkt. # 172-6, at 10 (Stark Dep., at 32)). This method is used exclusively by him; no one else has used it to perform the type of evaluation he's doing for the defendants here. (Dkt. # 172-6, at 10 (Stark Dep., at 30-32)).

The obvious issue here is the reliability of this methodology. The defendants submit that Mr. Stark's methodology is, in essence, his experience and argue that that is sufficient. (Dkt. #190, at 11-12). But "experience without reliable, testable methodology is not sufficient." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 776 (7th Cir. 2014)(citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)). Mr. Stark's methodology, as the defendants concede, (Dkt. # 190, at 11), has not been tested, reviewed, or generally accepted. *See Daubert*, 509 U.S. 593-94.

While it is true that the *Daubert* inquiry is a flexible one, that does not mean it can be abandoned and, as the defendants seem to suggest, anyone with a lot of experience is allowed to testify. The Supreme Court made that clear in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999):

> In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish

> among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

526 U.S. at 151. Here, we have no idea as to the accuracy of Mr. Stark's "valuation matrix" or whether it produces erroneous results. We do know that no one else uses it in the outdoor advertising asset appraisal community. *See Kumho Tire*, 526 U.S. at 157 (upholding rejection of expert testimony where no indication in the record that other experts in the field used expert's methodology). The answers to the questions *Kumho Tire* tells us are relevant fail to demonstrate that Mr. Stark methodology is reliable.

The defendants provide nothing to suggest otherwise and, as already noted, it is their burden to do so. *Lewis*, 561 F.3d at 705. In their brief retort to the plaintiff's challenge to Mr. Stark's methodology, the defendants seem to conflate the inquiries into underlying data and qualifications with the inquiry into methodology. All they concern themselves with is Mr. Stark's experience. They rely exclusively on *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010 for the proposition that "[a]n expert's testimony is not unreliable simply because it is founded on his experience rather than on data." That's true, as far as it goes. But like all general propositions, it cannot decide a concrete case.

It cannot be too strongly emphasized that the "language of an opinion is not always to be parsed as though we were dealing with language of a statute," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 341 (1979), and "[j]udges expect their pronunciamentos to be read in context." *Wisehart v. Davis,* 408 F.3d 321, 326 (7th Cir.2005); see also *Illinois v. Lidster,* 540 U.S. 419, 424 (2004) (general language in judicial opinions must be read in context and not as "referring to quite different circumstances that the Court was not then considering"); *United States v. Ker Yang*, 799 F.3d 750,

755 (7th Cir. 2015).

In short, to say that experience may be sufficient under Rule 702 does not begin to answer the specific question posed by this case. Mr. Stark's testimony *is* founded on data. The issue here is not the data but the methodology he applied to that data. "[T]he selection of data inputs to employ in a model is a question separate from the reliability of the methodology reflected in the model itself." *Manpower, Inc.,* 732 F.3d at 807. In this instance, the defendants have failed to meet their burden of demonstrating that Mr. Stark's methodology is reliable.

It should be said that judges do not relish scrutinizing expert testimony and certainly do not relish excluding it. But the Supreme Court in *Daubert* charged them with a "gatekeeping" duty in *Daubert*. 509 U.S. at 597. To be sure, criticisms of *Daubert* have been legion, *see, e.g.* A. Leah Vickers, Daubert, Critique and Interpretation: What Empirical Studies Tell Us about the Application of *Daubert*, 40 U.S.F. L. Rev. 109, 109 (Fall 2005), but this is the world we live in. The insistence on reliability helps to ensure the integrity of the judicial process, *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1340 (7th Cir.1989), and is of such transcendent importance that judges can act *sua sponte* to prohibit testimony that does not pass muster under *Daubert*. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1094 (7th Cir.1994).

The proponent of expert evidence cannot simply tout his expert's experience the way the defendants have done here and expect to overcome a challenge to admissibility. The failure of Mr. Stark to explain his methodology in any meaningful fashion leaves the court no choice. That's especially true in a case where the methodology is a novel one that is untested and unused in the

relevant industry.[4]

In the realm of expert testimony, the appraisal of the market value of a business like a billboard is often a comparatively uncomplicated problem. It doesn't involve arcane scientific evidence or the kind of analysis involved in antitrust cases. In this case, the issue seems quite straightforward; it involves the value of a sign in a parking lot. There is nothing surprising in the offing: one side will say it's a goldmine and the other will say it's a money pit. But the defendants have presented the court with a completely novel and untested approach to the appraisal of the billboard. The defendants made a strategic decision to utilize an expert who did not employ a standard or accepted methodology. That, of course, was their choice. But there are risks associated with that choice and the defendants are bound by their own strategic decisions. *See Silc v. Crossetti,* 2013 WL 3872196, 3 (N.D.Ill. 2013)(collecting cases).

## CONCLUSION

The plaintiff's motion to bar either all or portions of the testimony/reports of the defendants' expert witnesses [Dkt. # 172] is GRANTED.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE: 11/10/15**

---

[4] The Supreme Court was well aware, when it charged district court judges with the instituted the gatekeeping role in *Daubert*, that the more stringent test for admission of expert testimony it was imposing would on occasion screen out "authentic insights and innovations." But the Court explained that was "the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 579 U.S. at 597.