# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PARAMOUNT MEDIA GROUP, INC.,    )
an Illinois corporation,    )
   )
      Plaintiff,    )
   )
      v.    )     No. 13 C 3994
   )
VILLAGE OF BELLWOOD, an Illinois    )     Judge Jorge L. Alonso
municipal corporation, and IMAGE MEDIA    )
ADVERTISING, INC., an Illinois corporation,    )
   )
      Defendants.    )

## MEMORANDUM OPINION AND ORDER

Before the Court are four motions. For the reasons explained below, the motions of defendants Image Media Advertising, Inc. ("Image Media") and the Village of Bellwood ("Bellwood") for summary judgment [217, 220] are granted as to Counts I through V of the First Amended Complaint, and the Court relinquishes supplemental jurisdiction over Counts VI and VII; the motion of plaintiff Paramount Media Group, Inc. ("Paramount") to strike new evidence presented in Image Media's reply [242] is denied; and the motion of Paramount to strike Bellwood's reply to Paramount's response to Bellwood's statement of facts [244] is granted.

## BACKGROUND

Paramount is a company that buys and leases property, builds billboards on the property, and sells advertising on those billboards. (ECF No. 226, Pl.'s Resp. Image Media's LR 56.1(a)(3) Stmt. ¶ 2.) Image Media is one of its competitors. (*Id.* ¶ 1.) Bellwood is an Illinois municipal corporation located in Cook County. (*Id.* ¶ 3.) This action arises out of Bellwood's

billboard regulations and its lease of property to Image Media. Defendants have filed separate motions for summary judgment.

## MATERIAL FACTS[1]

### *The Sodhi Lease Agreement*

In February 2005, Paramount entered into a Lease Agreement (the "Sodhi Lease Agreement") with Khushpal and Harmeet Sodhi, the owners of the real property located at 1133-1135 Bellwood Avenue in Bellwood (the "Sodhi Property"). The Sodhi Lease Agreement provides:

> The undersigned [(the Sodhis, as trust beneficiaries)], as LESSOR, hereby leases and grants exclusively to LESSEE [(Paramount)], for the purpose of erecting and maintaining one new 20x60 double faced advertising sign and structure on the property shown on the diagram and description on the reverse side of this agreement or on the attached Exhibit "A", at the address of <u>1133-35 Bellwood Ave</u>, City of <u>Bellwood</u>, State of <u>Illinois</u>, <u>Cook</u> County, <u>Proviso</u> Township on LESSOR's property located adjacent to Highway <u>I-290</u> commencing on the date

---

[1] The Court's review of the parties' fact statements and responses and the record evidence was time-consuming. Some of the fact statements are immaterial. Some of them are not statements of fact, but of opinion. (*See, e.g.*, ECF No. 226, Pl.'s Stmt. Add'l Facts ¶¶ 17, 23.) In several instances, the parties failed to respond directly to a given statement, failed to provide support for a statement, or attempted to support a denial with evidence that did not actually provide support or with impermissible argument that is beside the point. (*See, e.g.*, Pl.'s Resp. Image Media's LR 56.1(a)(3) Stmt. ¶ 12; ECF No. 237, Image Media's Resp. Pl.'s Stmt. Add'l Facts ¶ 27; ECF No. 240, Bellwood's Resp. Pl.'s Stmt. Add'l Facts ¶ 19.) "[T]he purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts—not to make factual or legal arguments." *LaSalvia v. City of Evanston*, 806 F. Supp. 2d 1043, 1046 (N.D. Ill. 2011) (citing *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006)). The parties also repeatedly mischaracterize what the other side has purportedly admitted. The Court will not address each instance in which a party has failed to satisfy the requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1 but will simply say that it has disregarded immaterial facts, improperly-supported facts and denials of facts, and argument masquerading as fact.

Bellwood filed a response to Paramount's Local Rule 56.1(b)(3)(C) statement of additional material facts. (ECF No. 240.) Bellwood also filed a separate "reply" to Paramount's response to Bellwood's Local Rule 56.1(a)(3) Statement. (ECF No. 239.) Paramount moves to strike the reply, and the Court grants the motion. Bellwood did not seek leave of court to file this extra document, which is not contemplated by Local Rule 56.1.

the structure is erected, and unless terminated earlier as provided, shall end Fifty (50) years from the commencement date.

(ECF No. 219-1, Sodhi Lease Agreement, at 1.)

Because the Sodhi Property is in a business area located next to Interstate Highway 290, state regulations required Paramount to obtain a sign permit from the Illinois Department of Transportation ("IDOT") before building a billboard there. *See* Ill. Admin. Code tit. 92, § 522.30. Paramount applied for such a permit for the Sodhi Property, and IDOT issued one on February 7, 2007. Paramount did not build a sign prior to the permit's expiration in 2010, so Paramount received a new IDOT permit for the Sodhi Property in July 2011, which was valid until July 21, 2014. Paramount did not build a sign on the Sodhi Property during that time frame, nor did it apply at any time for a sign permit from Bellwood, which required all owners or operators of off-site advertising signs[2] to apply for and obtain a permit.

*Bellwood's Sign Ordinance and Amendment*

On February 25, 2009, Bellwood enacted Ordinance 9-4, which amended the Bellwood Zoning Code to establish regulations for on- and off-premises signs. (ECF No. 222-1, 2009 Ordinance.) With one exception that is inapplicable here, the sign ordinance provides in pertinent part that subsequent to its effective date, "no new off-site advertising sign permit will be issued by the village." Bellwood, Ill. Code § 156.207(E) (original version at § 156.107(E)). On March 21, 2012, Bellwood enacted Ordinance 12-9, which amended § 156.207 to add the following exception to the ban on off-site signs: "An off-site advertising sign permit proposed to

---

[2]The Bellwood Code defines an "off-site advertising sign" as "[a]ny sign, including, without limitation, a billboard, that advertises or directs attention to a business, commodity, service, or activity conducted, sold, or offered on property other than the lot on which the sign is located and meets current IDOT requirements within 660 feet of I-290 and I-294." Bellwood, Ill. Code § 156.203(A)(12).

3

be located on village owned or controlled property may be exempted from the terms of this chapter subject to any condition set by the Mayor and Board of Trustees."  (ECF No. 219-6, 2012 Ordinance; Bellwood, Ill. Code § 156.207(F).)

***The Bellwood Property***

Bellwood owns a parcel of real property at 1156 Bellwood Avenue (the "Bellwood Property"), which is across the street from the Sodhi Property.[3]  On March 21, 2012, Paramount sent Bellwood a letter offering $1,140,000 to lease the Bellwood Property for the purpose of installing a billboard, to be paid in annual installments of $24,000 in years one through ten, $26,000 in years eleven through twenty, $29,000 in years twenty-one through thirty, and $35,000 in years thirty-one through forty.  (ECF No. 219-10, Letter from Ronald J. Broida to Michael Castaldo, Jr.)  Image Media offered Bellwood $800,000 to lease the same property and install a billboard.[4]  Bellwood accepted Image Media's offer, and on October 17, 2012, those parties entered into an Agreement (the "1156 Agreement"), which states that Bellwood will use its "best efforts" to grant Image Media "permitting" for an outdoor advertising structure on the property and that Bellwood would provide Image Media with a leasehold interest or easement in the property.  (ECF No. 219-11, Agreement, at 1.)  The 1156 Agreement further provides that Image Media shall pay Bellwood $200,000 upon execution of the agreement; $200,000 within five days after Bellwood issued a "conditional use permit, any required variances and the local sign

---

[3]IDOT regulations prohibit the construction of billboards in business areas on the same side of an interstate highway within five hundred feet of a location where a permit has already been issued for the construction of a billboard.  Ill. Admin. Code tit. 92, § 522.200.

[4]The parties' fact statements do not clarify at what time in 2012 Image Media made a firm offer.

permit" for billboard construction; and $400,000 upon the earlier of IDOT's issuance of a sign permit or August 31, 2014. (*Id.*) It also contains the following provisions:

> Image Media shall indemnify and hold harmless [Bellwood] from and against any and all claims and liabilities that may be asserted against [Bellwood] by Paramount Outdoor as a result of [Bellwood's] entering into this Agreement or the transaction contemplated thereby, except any claims or liabilities arising due to [Bellwood's] failure to comply with any applicable statutes, laws or ordinances.
> . . .
> Unless the transactions contemplated hereby are sooner completed or this Agreement is sooner terminated, the term of this Agreement shall expire on August 31, 2014. During the term of this Agreement, [Bellwood] shall not issue a permit for the construction, operation or maintenance of an outdoor advertising sign within 500 feet of the Subject Property to any person, partnership, company, corporation or other entity other than Image Media.

(*Id.* at 3, 4.) On November 1, 2013, Bellwood published in a newspaper of general circulation its intent to enter into a long-term lease with Image Media, pursuant to 65 ILCS 5/11-76-2. (ECF No. 219-16.) Bellwood and Image Media have since agreed to amend the 1156 Agreement to provide that Image Media will pay $2.2 million over a period of forty years, but they have not yet executed an amended agreement.

### Paramount's Lawsuits and the Sodhis' Termination of the Sodhi Lease Agreement

On May 30, 2013, Paramount filed its original complaint in the instant action, alleging six claims: violation of its First Amendment rights (Count I); violation of its Fourteenth Amendment rights to due process and equal protection (Counts II and III); attempt to monopolize, monopolization, and conspiracy to monopolize the billboard market in Bellwood, in violation of § 2 of the Sherman Act (Count IV); conspiracy in restraint of trade, in violation of § 1 of the Sherman Act (Count V); and a claim for a declaratory judgment that Bellwood did not have the authority under Illinois law to enter into the 1156 Agreement with Image Media (Count

VI).  Paramount seeks declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

Subsequently, Image Media's principal, Michael Scheid, contacted Khushpal Sodhi and asked him about the Sodhi Lease Agreement, which is mentioned in Paramount's complaint.  In October 2013, counsel for the Sodhis sent Paramount a letter stating that the Sodhis were "cancel[ing]" the Sodhi Lease Agreement because 1) Paramount had never given any consideration for it; 2) Paramount had not used good-faith efforts to apply for the requisite permits in a timely manner; 3) Paramount had "sought to defraud" the Sodhis by "seeking to lease and negotiating with other property owners and sites in close proximity to the subject site in an effort to leverage either a better deal or a better sign location"; and 4) the lease agreement has no definite term.  (ECF Nos. 226-1, Ex. 9, and 219-13, Letter from Dennis Bordyn to David Quas.)[5]  On October 23, 2013, the Sodhis and Image Media entered into a Lease Option Agreement for the Sodhi Property, under which the Sodhis granted Image Media "the option to lease a portion of" the property for the purpose of constructing a billboard there.  (ECF No. 219-14.)  Image Media paid the Sodhis $30,000 upon entering into the Lease Option Agreement.  The Sodhis and Image Media also entered into an Indemnification and Hold Harmless Agreement, pursuant to which Image Media agreed to indemnify and defend the Sodhis in all actions arising from the Lease Option Agreement.

On November 13, 2013, Paramount filed a complaint against the Sodhis in the DuPage County Circuit Court (the "DuPage Action"), seeking a declaratory judgment that the Sodhi Lease Agreement is valid and enforceable.  (ECF No. 226-4 at 1-5.)  Paramount later amended

---

[5]The version of this letter that Paramount has submitted is dated October 25, 2013.  The version of the letter that Image Media has submitted is dated October 22, 2013.

its complaint to include IDOT as a defendant and seek a declaratory judgment that Paramount's IDOT permit is valid. (ECF No. 226-4 at 6-13.) The DuPage Action is still pending.

On January 23, 2014, counsel for the Sodhis sent a letter to IDOT citing "lease cancelation" and requesting that IDOT "void" the sign permit that IDOT had issued to Paramount in 2011 for a sign on the Sodhi Property. (ECF No. 226-3, Letter from Dennis Bordyn to Tim Hoesli.)

On January 29, 2014, Paramount filed a First Amended Complaint in this action (the current complaint), which added Count VII, a claim against Image Media for tortious interference with the Sodhi Lease Agreement. (ECF No. 81.)

On March 5, 2014, IDOT sent Paramount a "Notice of Invalid Permit," which stated that IDOT had received "notification of the cancelation of the lease required," so Paramount's permit was "now void." (ECF No. 219-4, Letter from Salmon Danmole to Paramount (citing Ill. Admin. Code tit. 92, § 522.50(b)(5) ("If the lease, contract to purchase or other consent to erect and maintain a sign is terminated prior to the erection of the sign, the permit is void.")).)

***Paramount's Proposed Billboard***

Paramount seeks, among other relief, damages to compensate it for "the value of the lost revenue as a result of Paramount's inability to construct a billboard" on the Sodhi Property. (First Am. Compl. at 9.) It seeks $1,678,000 in compensatory damages for what it says is the fair market value of a 20-by-60-foot double-sided static billboard.[6] (ECF Nos. 81-2; 151-1 at 3.)

---

[6]Magistrate Judge Cole, who supervised discovery and handled discovery motions in this case, barred Paramount from presenting a damages claim relating to a digital billboard and also barred David Quas, Paramount's president and CEO, from testifying about the present value of the future income of a billboard. (ECF Nos. 169, 176.) This Court overruled Paramount's objections to those rulings. (ECF No. 200.)

Because Magistrate Judge Cole barred Paramount from introducing new site plans for its billboard that it disclosed after the close of fact discovery, (ECF No. 124),[7] Paramount is limited to presenting evidence regarding its proposed sign as set forth in the site plan it disclosed in February 2014 (the "February 2014 Site Plan"), (ECF No. 219-9 at 1).

## SUMMARY JUDGMENT STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). Where the moving party seeks summary judgment on a claim as to which it bears the burden of proof, "it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). When the nonmovant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out

---

[7]Judge Cole stated in a subsequent order: "Image Media . . . argues that [plaintiff's expert's] opinion that the sign's design now depends on a variety of factors is an attempt to introduce a new site plan in violation of the Court's order barring Paramount from introducing new site plans after the close of fact discovery. Image Media is right that defendant cannot make its sign a 'moving target' by adopting an 'it depends strategy' at this late date. Image Media is entitled to know what sign Paramount intends to build, so it can defend Paramount's claims. Paramount should not be permitted to amend its sign any time Image Media points out a claimed design flaw." (ECF No. 182 at 8 n.1 (citation omitted).)

to the district court" that there is no evidence supporting the nonmovant's claim. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 325 (1986); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th

Cir. 2013). "Upon such a showing, the nonmovant must then 'make a showing sufficient to

establish the existence of an element essential to that party's case.'" *Modrowski*, 712 F.3d at

1168 (quoting *Celotex*, 477 U.S. at 322).

## DISCUSSION

**A.     Section 1983 First Amendment Claim (Count I)**

**1.     Bellwood's Sign Regulations**

In Count I, Paramount alleges that Bellwood's sign ordinance violates the First

Amendment.   Defendants contend that Paramount lacks Article III standing to challenge the

ordinance because a decision in its favor would not redress its asserted injury, which is the

inability to construct a billboard on the Sodhi Property.   "Article III standing 'requires the

litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to

the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Six Star*

*Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 801 (7th Cir. 2016) (quoting *Hollingsworth*

*v. Perry*, --- U.S. ----, 133 S. Ct. 2652, 2661 (2013)).   Paramount bears the burden of establishing

these elements, and on summary judgment it must set forth, by affidavit or other evidence,

specific facts regarding the existence of standing.   *See id.* at 801-02.

Defendants rely on *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge*, 9 F.3d

1290, 1291 (7th Cir. 1993), in which the Court of Appeals held that the plaintiff, a billboard

company, lacked standing to challenge a village's sign ordinance because the plaintiff would be

unable to construct its proposed sign "even if it achieved total victory in th[e] litigation."   The

*Harp* plaintiff's proposed sign was prohibited not only by the challenged ordinances, but also by

another ordinance that the plaintiff did not challenge. *Id.* at 1292. Defendants maintain that even if this Court declared unconstitutional Bellwood's billboard ban and its exception, there are a number of reasons why Paramount would not be able to build its proposed sign. One of them is that Paramount no longer has a contractual right to build on the Sodhi Property due to the Sodhis' termination of the Sodhi Lease Agreement. Paramount insists that the Sodhis are bound by that agreement, and cites the pending DuPage Action, but fails to explain why this Court should discount the fact that Paramount currently has no right to construct a billboard on the Sodhi Property. Likewise, Paramount does not have the required IDOT permit to build there. Although IDOT is a defendant in the DuPage Action and Paramount seeks therein to enjoin IDOT "from voiding" the permit that was to expire in 2014 (ECF No. 226-4 at 11), Paramount does not explain why that relief would entitle it to a permit that would allow it to build on the Sodhi Property now.

Image Media also contends that it would be physically impossible for Paramount to build its proposed sign on the Sodhi Property. In support of this argument, Image Media submits the expert report and declaration of Kevin Westerkamp, a licensed professional land surveyor. Paramount moves to strike Westerkamp's declaration on the ground that it is "new evidence" submitted with Image Media's reply instead of its opening brief. Image Media submitted the declaration in an attempt to address Paramount's objection that Westerkamp's expert report is unsworn, and Image Media argues that evidence at summary judgment must be admissible only in substance, not in form. Although Westerkamp's declaration manages to *authenticate* the report, however, Westerkamp fails to swear that the statements in his report are true and correct. (ECF No. 237-2, Decl. of Kevin Westerkamp.) In other words, Westerkamp does not verify the report's substance, although he does reiterate a few of the critical points he makes in the report.

10

Unsworn expert reports are inadmissible under Federal Rule of Civil Procedure 56(e). *Estate of Brown v. Thomas*, 771 F.3d 1001, 1005-06 (7th Cir. 2014). Therefore, the Court has not considered Westerkamp's expert report. Nonetheless, the Court denies Paramount's motion, which is directed to the declaration, not the report. Paramount had two opportunities to respond to the substance of Westerkamp's report and one opportunity to respond to the declaration—which simply reiterates portions of the report and presents nothing that Paramount had not previously seen—and did not do so. It raised only a procedural objection. Because Paramount was not prejudiced by the late submission of Westerkamp's declaration, the Court has considered the declaration.

Westerkamp states therein that in connection with his analysis of Paramount's proposed sign as set forth in its February 2014 Site Plan, he visited the Sodhi Property and made his own measurements. (Westerkamp Decl. ¶¶ 3-4.) Westerkamp further states that the roof of the apartment building located on the Sodhi Property "has eaves and a gutter overhang extending approximately 2.5 feet over the base" of the proposed sign structure; Paramount's sign column "lies within 2.5 feet and intersects with the eave and gutter overhan[g] on the south and east side of the apartment building located on" the Sodhi Property; and if the February 2014 Site Plan were modified to reposition the sign column "3.5 feet to the east in order to avoid the gutter and eave overhang (by only 0.61 feet), the face of Paramount's proposed sign overhangs the village [alley] beyond the east property line by 2.22 feet." (*Id.* ¶¶ 6-8.) Thus, says Image Media, the proposed sign cannot be built as designed, and if it were repositioned, it would extend past the property line and require a zoning variance to build.

Paramount does not substantively contest Westerkamp's conclusions or submit any evidence to the contrary. It maintains that its "primary goal is to build a sign"; it "is not insisting

that the billboard be on a certain location on the property or of a certain size"; and "the process of design and construction has not yet begun in earnest." (ECF No. 225, Pl.'s Opp'n Image Media's Mot. 18-19.) Paramount submits that "[w]hile Magistrate Judge Cole barred the use of any site plan other than the February 2014 site plan, that does not mean that once the impediment imposed by the Ordinance is removed, Paramount would not be able to work with Bellwood through the design and construction 'process' to build its billboard," and "Image Media has presented no admissible evidence to the contrary." (*Id.* at 19.) But it is Paramount's burden to show that its asserted injury *likely* will be redressed by a favorable decision in this case. *See Harp*, 9 F.3d at 1292. Although the plaintiff in *Harp* did not argue that it would be willing to build a billboard of a size that would comply with the valid ordinance that rendered its injury unredressable, the Court of Appeals reasoned that even if it had, the Court would have to ask how likely it was "that a judgment will do the victor any good," because "[l]aw like life deals in probabilities." *Id.* The best Paramount can do is opine that it may be able to "work with" Bellwood to design a billboard that could be built (and that would come only after a victory in the DuPage Action and IDOT's issuance of a permit).

There are several impediments to redressability. The DuPage Action would have to be resolved in Paramount's favor such that Paramount would have a protectible property interest; IDOT would have to issue Paramount a permit to build a billboard on the Sodhi Property; and Paramount would have to design and obtain approval for a new proposed billboard that would fit on the property. Paramount has not shown that its alleged injury would likely be addressed by a ruling that either the billboard ban or the exception for Bellwood-controlled property is unconstitutional. Because Paramount lacks standing to bring a First Amendment challenge to

Bellwood's billboard regulations, summary judgment in defendants' favor is appropriate on Count I.

In addition to the lack of redressability, there is a lack of traceability insofar as Paramount challenges the sign ordinance's exception for property owned or controlled by Bellwood. But first, the Court will examine whether the exception would be severable from the billboard ban in the event that the exception were found unconstitutional. "Severability of a local ordinance is a question of state law . . . . " *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Under Illinois law, whether one provision of an ordinance is severable from the remainder is a question of legislative intent; the court considers "whether the valid and invalid provisions . . . are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently." *Kakos v. Butler*, 63 N.E.3d 901, 911 (Ill. 2016) (internal quotation marks and citation omitted). When Bellwood amended § 156.207 to create the exception to the billboard ban, it included a severability clause, which allows the provision to be invalidated without condemning the entirety of the legislation. (2012 Ordinance at 4.) Moreover, the preamble to the amendment expressly refers to the billboard ban's purpose (to address the public's desire to stop the proliferation of billboards given their "detrimental impact" on surrounding property) and states that the exception was designed to generate funds for the village while continuing to stop the proliferation of billboards and "preserve the residential areas." (*Id.* at 1.) The billboard ban on its own would still serve these interests even without the exception for Bellwood-controlled property, and it is evident that Bellwood's Village Board did not consider the ban and the exception to be interdependent and existing as a whole. Paramount

does not articulate any reasoned argument to the contrary. Accordingly, the Court concludes that the exception is severable from the billboard ban.

Returning to the issue of traceability, the Court concludes that although Paramount challenges both the billboard ban and the exception, it has not shown that its alleged injury is traceable to the exception. Prior to the amendment of the sign ordinance in 2012, Paramount was unable to build a billboard on the Sodhi Property, and that is due to the 2009 ban on off-site advertising. Thus, Paramount's challenge to the ordinance's exception fails not only for lack of redressability but also for lack of traceability. *See Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 428 (W.D.N.Y. 2015) (plaintiff lacked standing to challenge a noise ordinance where its injury arose from the application of a different ordinance); *Advantage Media, LLC v. City of Eden Prairie*, 405 F. Supp. 2d 1037, 1042-43 (D. Minn. 2005) (plaintiff lacked standing to challenge sign-code provisions where its injury was not traceable to them in that it was denied a permit on the basis of other provisions).

Even if Paramount's injury—which is traceable only to the billboard ban—were redressable, defendants would be entitled to summary judgment on Count I because the ban passes muster under the four-part test for assessing commercial speech restrictions that the Supreme Court articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Under *Central Hudson*, this Court must determine 1) whether the speech in question concerns lawful activity and is not misleading,[8] and 2) whether the asserted governmental interest is substantial, and, if so, 3) whether the regulation directly advances that interest and 4) whether the regulation is not more extensive than necessary

---

[8]There is no argument that there is anything unlawful or misleading about the kind of commercial speech Paramount intends to use on its proposed billboard.

to serve that interest. *Id.* at 566. The party seeking to uphold a restriction on commercial speech carries the burden of justifying it. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816-17 (2000).

Bellwood's billboard ban cites several justifications, among them "limit[ing] the proliferation of" signs that are "of an accessory or incidental nature" and "ensur[ing] that signs are compatible with adjacent land uses and with the overall visual environment of the village." Bellwood, Ill. Code § 156.200(C)(2), (4) (2009). And as discussed above, the ordinance implementing the 2012 amendment also states that the ban "is in effect because the 'public' has expressed the position that the placement of billboard signs in and about the Village has a detrimental impact on the surrounding property." (2012 Ordinance at 2.) Aesthetic concerns are widely recognized as legitimate governmental interests that may be addressed by the regulation of signs. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (stating that there cannot be "substantial doubt that the twin goals that the [billboard] ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals"); *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1114 (7th Cir. 1999) ("After the Supreme Court's decision in [*Metromedia*], we do not think that it can be said that the City's interests in traffic and aesthetics are not substantial municipal goals."); *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("[S]igns take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation."); *CBS Outdoor, Inc. v. Vill. of Plainfield*, 959 F. Supp. 2d 1054, 1064 (N.D. Ill. 2013). Paramount contends that, while the asserted governmental interests are legitimate, those interests are "not present here" because Bellwood's motivation for enacting the exception to the billboard ban was purely financial. (Pl.'s Opp'n Image Media's Mot. 6.) This argument is flawed because it is relevant 1)

15

to the third part of the *Central Hudson* test, not the second, and 2) to the exception, not the ban itself.

Paramount next argues that Bellwood's ordinance does not advance the asserted governmental interests. Paramount again relies on the exception for Bellwood-controlled property, but does not present a persuasive argument that the billboard ban on its own fails to advance Bellwood's visual environment. In any event, the Court does not see how a limited exception enacted three years after the ban completely undermines the ban's effects.[9] The ban undoubtedly advances Bellwood's interests in its appearance and compatibility with adjacent land uses. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807 (1984) (concluding that a ban on the posting of signs on public property directly advanced a city's interest in preventing visual clutter); *Metromedia*, 453 U.S. at 508-11.

Paramount asserts that Bellwood's billboard ban also fails to meet the fourth part of the *Central Hudson* test, under which the governing body "is not required to employ the least restrictive means conceivable, but [] must demonstrate narrow tailoring of the challenged regulation to the asserted interest—'a fit that is not necessarily perfect, but reasonable; that

---

[9]Paramount cites three decisions in which the Supreme Court invalidated commercial-speech restrictions for lack of a reasonable fit: *Greater New Orleans Broadcasting Association, Inc. v. United States*, 527 U.S. 173 (1999); *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995); and *City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993). Those decisions are distinguishable because they involved situations where an entire regulatory scheme was irrational or the regulations at issue were swallowed by their exceptions. That is not the case here; there is only the limited exception for Bellwood-controlled property, which is not so pervasive as to undermine or counteract the effects of the billboard ban. Even with the exception, the billboard ban would continue to advance Bellwood's asserted interests. *See Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 107-08 (2d Cir. 2010) (limited exceptions to zoning regulations banning outdoor advertising signs did not render regulatory scheme unconstitutionally underinclusive); *see also Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 811 (1984) ("Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the City's appearance.").

represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989)). Oddly, Paramount again relies on the subsequent amendment when arguing that the billboard ban itself is not narrowly tailored. It also conclusorily argues that a complete ban is not narrowly tailored to achieve the asserted interests and simply states, without further argument, that "[m]any courts have found complete bans on billboards to be unconstitutional," citing three district court decisions from other districts. (ECF No. 223, Pl.'s Opp'n Bellwood's Mot. 10.) Paramount fails to develop any argument as to why this Court should follow those decisions, why they are analogous to this case, or why Bellwood's billboard ban is not a reasonable fit. Courts are "not in the business of formulating arguments for the parties." *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999); *see also United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted).

Paramount also contends that Bellwood has "a wide range of arrows in its regulatory quiver" to protect aesthetics, (Pl.'s Opp'n Bellwood's Mot. 10), but it fails to explain why the village's billboard ban is out of proportion with this interest.[10] Although Bellwood has banned off-site advertising, its sign regulations still permit a variety of on-site commercial signs. *See* Bellwood, Ill. Code § 156.200 *et seq.* The village has not cut off all channels of commercial

---

[10]Paramount also presents an argument that Bellwood's sign ordinance is an unconstitutional prior restraint. But it did not plead such a claim, nor are there any allegations that can be so construed. A plaintiff may not amend its complaint through arguments in a response brief to a motion for summary judgment. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Furthermore, Paramount's prior-restraint argument is based on the exception to the billboard ban, yet, as the Court has discussed, Paramount's asserted injury is not traceable to the exception.

speech.  In the Court's view, a reasonable fit exists between Bellwood's ends of preserving the visual environment and compatibility with adjacent land uses and the means Bellwood has used to accomplish those ends, the prohibition of new off-site commercial signs.  *See Metromedia*, 453 U.S. at 508 ("If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.  The city has gone no further than necessary in seeking to meet its ends.  Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs."); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 911-914 (9th Cir. 2009) (holding that the city did not violate the First Amendment by prohibiting most off-site commercial advertising while also contracting with a private party to permit advertising at city-owned transit stops); *Interstate Outdoor Advert., L.P. v. Zoning Bd.*, 706 F.3d 527, 534 (3d Cir. 2013) (holding that township's ban on off-site advertising did not violate the First Amendment).

Accordingly, the Court concludes that Paramount does not have standing to challenge Bellwood's sign regulations, and even if it did, the regulation from which its asserted injury stems—the billboard ban—does not violate the First Amendment.  Because the issues discussed above are dispositive, the Court need not reach defendants' remaining arguments for summary judgment.  The Court grants defendants' motions for summary judgment on Count I.

## 2.     Image Media

Aside from Paramount's lack of standing, there is another reason why Image Media is entitled to summary judgment on Count I.  Image Media argues that it is a private actor that cannot be liable for the enactment and amendment of Bellwood's ordinance.  "Suits under § 1983 are meant to deter state actors from using the 'color of state law' to deprive individuals of

18

rights guaranteed by the Constitution." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015). To prove its claim, Paramount must show two elements: "(1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States." *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). "[C]onduct of private actors may, in some cases, amount to 'state action' where the deprivation is 'caused by the exercise of some right or privilege created by the state . . . or by a person for whom the state is responsible' and 'the party charged with the deprivation . . . may fairly be said to be a state actor.'" *Id.* at 398 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "A private defendant acts under color of state law for purposes of Section 1983 when it is a willful participant in joint action with the State or its agents." *Id.* (internal quotation marks, brackets, and citation omitted). To prove its § 1983 claims against Image Media, Paramount must show a "sufficient nexus" between the defendants such that Image Media's alleged infringement of Paramount's federal rights is "fairly attributable to" Bellwood. *See id.*; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009) ("[O]n some occasions, the acts of a private party are fairly attributable to the state because the party has acted in concert with state actors.").

Image Media points out, and Paramount does not dispute, that there is no evidence that Image Media was involved in the enactment of Bellwood's billboard ordinance or the amendment to the ordinance. Accordingly, Image Media cannot be liable under § 1983 for the alleged constitutional injuries resulting from that action. Paramount does argue that the defendants "conspired to prevent Paramount from exercising its First Amendment rights in addition to eliminating it as a competitor," and cites the allegations underlying the antitrust and

19

tortious interference claims. (Pl.'s Opp'n Image Media's Mot. 15.) But Paramount did not plead such a claim; its First Amendment claim is based solely on Bellwood's sign regulations, and Paramount does not allege that Image Media participated in or contributed to the deprivation of Paramount's First Amendment rights. As noted above, a plaintiff may not amend its complaint through arguments in a response brief to a motion for summary judgment. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996).

Even if Paramount had raised such a claim, it would not withstand summary judgment. In support of its contention, Paramount lists various facts (as well as conjecture) related to the 1156 Agreement and then argues in conclusory fashion that "[t]here can be no question that Image Media and Bellwood worked together to prevent Paramount from exercising its right to free speech." (Pl.'s Opp'n Image Media's Mot. 15.) It is Paramount's responsibility to indicate the relevance of its facts under the correct legal standard. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Its perfunctory arguments on the issue are therefore waived and warrant no discussion. *See Perez v. Ill.*, 488 F.3d 773, 776-77 (7th Cir. 2007).

**B.      Section 1983 Due Process Claim (Count II)**

The Court's standing analysis in Count I applies equally to Counts II and III; the asserted injury is the same. But even if Paramount had standing to assert these claims, it could not prevail on the merits. In Count II, a claim for violation of Paramount's right to due process, Paramount alleges that defendants are "interfering with and . . . taking away Paramount's rights under its Lease Agreement and IDOT permit to construct and maintain a billboard." (First Am. Compl. ¶ 33.) Paramount clarifies in a brief that it is raising a substantive due process challenge to the billboard ordinance. (Pl.'s Opp'n Image Media's Mot. 13.) To prove this claim, Paramount must demonstrate that the ordinance either "infringes a fundamental liberty interest"

or is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *See Greater Chi. Combine & Ctr., Inc. v. City of Chi.*, 431 F.3d 1065, 1071 (7th Cir. 2005) (internal quotation marks and citation omitted). In support of its argument that Paramount fails to assert a property or liberty right that triggers protection under the due process clause, Image Media cites *CBS Outdoor, Inc. v. Village of Plainfield*, 959 F. Supp. 2d 1054, 1066-67 (N.D. Ill. 2013), in which the court held that plaintiff failed to state a substantive due process claim in relation to the defendant village's enforcement of an ordinance requiring the removal of a billboard. (ECF No. 218, Image Media's Mem. 14.) The *CBS Outdoor* court stated: "CBS . . . alleges that the Due Process Clause protects its liberty to communicate commercial and non-commercial messages to the public, to maintain and enjoy its property, to conduct business, and to contract with a landlord and customers. But these are not the type of fundamental liberties with which the Due Process Clause is concerned." *Id.* at 1067 n.4 (citation omitted). This Court agrees.

In its response, Paramount does not invoke a fundamental liberty or property right but instead contends that Bellwood's billboard ordinance is not "rationally related to achieve its alleged goals" because the exception for billboards on Bellwood's property "cannot be squared with any legitimate interest in aesthetics and safety." (Pl.'s Opp'n Image Media's Mot. 14.) Paramount cites no authority for this proposition, and the Court is unpersuaded. Paramount's burden on this claim is a "heavy one": as long as there is "any conceivable state of facts" that supports Bellwood's billboard ordinance, it passes muster under the due process clause; only if the ordinance is "patently arbitrary" would it fail. *See Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). As discussed above in section A.1, the billboard ban serves widely-recognized legitimate governmental interests that may be addressed by the

regulation of signs. Paramount asserts that the exception for Bellwood-controlled property renders the entire ordinance irrational because "Bellwood would be allowing precisely the same type of signs on its own property that it contends must be prohibited on private property." (Pl.'s Opp'n Image Media's Mot. 14.) Paramount cites no authority in support of this undeveloped assertion, which is rejected. The amendment creating the exception states that Bellwood wanted to continue to limit the number and density of billboards but also use funds generated by billboards on its property for the use and benefit of the community. (2012 Ordinance at 2-3.) The Court is not persuaded that the limited exception for Bellwood's property, based upon a balancing of Bellwood's interest in the appearance of the village with its rational interest in raising revenue, renders the ordinance arbitrary. *See Metro Lights*, 551 F.3d at 910 (stating that the exception for city-owned transit stops in a sign ordinance prohibiting off-site commercial advertising "does not weaken the direct link between the City's objectives [of traffic safety and aesthetics] and its general prohibition of offsite advertising"); *cf. Metromedia*, 453 U.S. at 521 n.25 ("[T]he Due Process Clause does not afford a greater degree of protection to appellants' business than does the First Amendment. Since we hold that the First Amendment interests in commercial speech are not sufficient to prevent the city from prohibiting offsite commercial advertisements, no different result should be reached under the Due Process Clause.").

Because Bellwood's billboard ordinance has a rational basis, it does not violate substantive due process, so the Court grants summary judgment in favor of defendants on this claim.

## C.      Section 1983 Equal Protection Claim (Count III)

In Count III, Paramount asserts a "class of one" claim for violation of its right to equal protection. To prove this claim, Paramount must show that it was "intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 851 (7th Cir. 2016) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "The rational-basis requirement sets the legal bar low and simply requires a rational relationship between the disparity of treatment and some legitimate governmental purpose." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (internal quotation marks and citation omitted).

Paramount maintains that it is comparable to Image Media "in all material respects" and that Bellwood had no rational basis for treating Paramount differently. (Pl.'s Opp'n Bellwood's Mot. 13-14.) The specific conduct at issue, however, is ill-defined. At one point in its argument on Count III, Paramount states that Bellwood's billboard ordinance "fails" rational-basis scrutiny, but it does not explain how Bellwood treated Paramount any differently from Image Media simply by enacting the billboard ban or its exception, neither of which discriminates among billboard companies. It appears that Paramount is really challenging Bellwood's actions after enacting the exception, for Paramount also complains about Bellwood's rejection of Paramount's offer to lease the Bellwood Property and its acceptance of Image Media's offer. But the evidence shows that Bellwood had rational bases for doing so. It is undisputed that Image Media offered Bellwood a lump sum of $800,000 to build a sign on the Bellwood Property, while Paramount offered $1,140,000 in increasing installments over a forty-year time period. The time value of money is one conceivable rational basis for Bellwood's having accepted the former offer. Moreover, Peter Tsiolis, Bellwood's Chief of Staff, testified at his

deposition that Bellwood preferred a lump-sum payment because of its multimillion-dollar budget deficit.[11]  (ECF No. 227, Dep. of Peter Tsiolis at 25, 49, 55.)

Paramount does not offer any argument as to why Bellwood's acceptance of Image Media's offer instead of Paramount's was irrational, other than the immaterial contention that Bellwood should have negotiated further with Paramount.[12]  It is Paramount's burden "'to eliminate any reasonably conceivable state of facts that could provide a rational basis for'" the difference in treatment.  *Black Earth*, 834 F.3d at 851 (quoting *Kopp*, 725 F.3d at 686).  It has failed to do so; therefore, the Court grants defendants' motion for summary judgment on Count III.

## D.     Antitrust Claims (Counts IV and V)

In Counts IV and V, Paramount alleges that the defendants conspired to restrain and monopolize trade, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. Bellwood argues that, under *Parker v. Brown*, 317 U.S. 341, 351 (1943), it is immune from Sherman Act liability.  "Under the *Parker* doctrine, the actions of municipalities fall outside the reach of the federal antitrust laws if the municipality can 'demonstrate that [its] anticompetitive

---

[11]Paramount unsuccessfully attempts to dispute this fact by citing the opinion of Bellwood's mayor, Frank Pasquale, that Bellwood's financial condition was "stable" in October 2012.  (ECF No. 232, Dep. of Frank Pasquale 16.)  But Paramount cites no evidence that contradicts Tsiolis's specific statement about the existence of the deficit or its amount.

Also unavailing is Paramount's argument that Tsiolis's statement is "undermined" by the subsequent proposed amendment of the 1156 Agreement's payment structure.  "[T]he test for rationality does not ask whether the benign justification was the *actual* justification."  *Kopp*, 725 F.3d at 686.  The proper question is whether the evidence reveals a conceivable rational basis, *notwithstanding* any improper motivation, for Bellwood's opting to lease its property to Image Media rather than Paramount.  *See id.*  It does.

[12]Paramount also asserts that Bellwood should have implemented a formal bidding process for a lease on the Bellwood Property, and intimates that its failure to do so constituted wrongdoing. But Paramount does not cite any authority that supports this suggestion.

activities were authorized by the State pursuant to state policy to displace competition with regulation or monopoly public service.'" *Justice v. Town of Cicero*, 577 F.3d 768, 775 (7th Cir. 2009) (quoting *Hallie v. Eau Claire*, 471 U.S. 34 (1985)). "Illinois similarly exempts local governments from antitrust law 'to the extent their activities are either (1) expressly or by necessary implication authorized by Illinois law and (2) within traditional areas of local government activity.'" *Id.* (quoting the Illinois Local Government Antitrust Exemption Act ("Antitrust Exemption Act"), 50 ILCS 35/1(a)). The Antitrust Exemption Act also states that the Illinois General Assembly "intends that all actions which are either (1) granted to home-rule units, whether expressly or by necessary implication or (2) within traditional areas of local government activity, except as limited by the Illinois Constitution or a proper limiting statute, be considered affirmatively authorized for home-rule units of government." 50 ILCS 35/1(a). Bellwood is a home-rule municipality, which, according to the Illinois Constitution, "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. art. VII, § 6(a); *see also* 225 ILCS 440/7 (providing that a municipal zoning authority may regulate the size, lighting, and spacing of commercial-area signs, consistent with the intent of the Illinois Highway Advertising Control Act and with customary use).[13] And, as Bellwood points out, in *Scadron v. City of Des Plaines*, 606 N.E.2d 1154, 1159, 1164-67 (Ill. 1992), the Illinois Supreme Court found that "municipalities have traditionally regulated outdoor advertising signs through the enforcement of local ordinances" and concluded that Illinois home-

---

[13]Moreover, aside from Bellwood's home-rule status, 65 ILCS 5/11-76-1 empowers municipalities to lease their real estate for any term not exceeding ninety-nine years.

rule municipalities' powers to regulate outdoor advertising and even totally exclude outdoor advertising signs were not preempted by the Illinois Highway Advertising Control Act.

Paramount does not dispute that Bellwood's regulation of outdoor advertising signs is expressly authorized by Illinois law and within a traditional area of local government activity. But it contends that Bellwood "asserted itself into the market" in 2013 by making itself the only "entity [that] could lease land to another whose purpose was to erect a billboard" in Bellwood, and therefore, due to the "market participant" exception to the *Parker* doctrine, Bellwood does not have antitrust immunity. (Pl.'s Opp'n Bellwood's Mot. 23.) In support, Paramount cites *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 374-75 (1991). The "market participant" exception, however, is "merely a suggestion" in dictum, not a rule of law. *Paragould Cablevision, Inc. v. City of Paragould*, 930 F.2d 1310, 1312-13 (8th Cir. 1991); *see also Sisters of St. Francis Health Servs., Inc. v. Morgan Cty.*, 397 F. Supp. 2d 1032, 1046 (S.D. Ind. 2005) ("The Supreme Court has entertained the idea of a market participant exception to the state action doctrine, but has not adopted the exception."). The Supreme Court itself characterized *Omni Outdoor* not as recognizing the exception, but as merely "leaving open the possibility" of it. *FTC v. Phoebe Putney Health Sys., Inc.*, --- U.S. ----, 133 S. Ct. 1003, 1010 n.4 (2013). Under *Parker*, Bellwood is entitled to immunity from the federal antitrust laws for its activities relating to its regulation of billboards.

As for Image Media, it argues that there is no evidence of anticompetitive behavior. In response, Paramount states that there is "copious evidence showing an agreement between Image Media and Bellwood to shut all competitors out of the relevant market," and goes on to cite the 1156 Agreement and its indemnification provision as well as Image Media's alleged tortious interference with the Sodhi Lease Agreement. Paramount then simply states, without

explanation, that the "totality of the evidence creates genuine issues of fact" as to whether defendants violated the Sherman Act. (Pl.'s Opp'n Image Media's Mot. 21-22.) As stated above, Paramount has the responsibility to explain the relevance of its facts under the correct legal standard. *See Puffer*, 675 F.3d at 718. There is no evidence that Image Media was involved in the enactment of the billboard ordinance or its amendment. Paramount evidently relies on the 1156 Agreement for the proposition that the defendants entered into an "agreement to restrain trade," but it is unclear to the Court, and Paramount does not explain, how that agreement constituted anticompetitive behavior, as is required for Sherman Act liability.[14] Nor does Paramount cite any authority in support of its undeveloped conclusion. It has thus waived its argument for Image Media's antitrust liability. *See id.*; *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

The Court grants defendants' motions for summary judgment on Paramount's antitrust claims.

---

[14] "Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive. Conduct that merely harms competitors, however, while not harming the competitive process itself, is not anticompetitive." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007) (citation omitted); *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.") (internal quotation marks and citation omitted).

**E.     State-Law Claims (Counts VI and VII)**

At this point, all that remains of this case are Paramount's state-law claims. "When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012); *see also* 28 U.S.C. § 1367(c)(3). In determining whether to exercise supplemental jurisdiction, the Court is to consider judicial economy, convenience, fairness, and comity. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). There is a general presumption in favor of relinquishing jurisdiction. *See RWJ*, 672 F.3d at 478; *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (recognizing "the sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims") (emphasis omitted); *Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011) ("It is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") (citation and brackets omitted). There are three situations, however, where jurisdiction over supplemental claims should be retained even though the federal claims have dropped out: (1) where the statute of limitations would bar the refiling of the supplemental claims in state court; (2) where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and (3) where it is obvious how the claims should be decided. *Williams*, 479 F.3d at 906-07.

The first and third factors do not favor retention. As for the second, although Judge Cole intensively supervised discovery and this Court reviewed certain of his rulings, these investments of time were not devoted primarily to the supplemental claims, nor were they

substantial enough to overcome the presumption of relinquishing jurisdiction. "The resources of the federal courts are necessarily limited, and federal courts must make prudent decisions about how those limited resources are employed." *Williams Elecs. Games, Inc. v. Garrity*, No. 97 C 3743, 2005 WL 2284280, at *8 (N.D. Ill. Sept. 15, 2005). Retention of the state-law claims would likely require this Court to expend significant additional time on this case. Accordingly, having considered the relevant factors, the Court declines to exercise supplemental jurisdiction over plaintiff's non-federal claims and dismisses them without prejudice. *See Harvey*, 649 F.3d at 533 (noting that, once a district court declines to exercise supplemental jurisdiction over state-law claims, "the proper course [is] to dismiss them without prejudice").

## CONCLUSION

The motions of Image Media Advertising, Inc. and the Village of Bellwood for summary judgment [217, 220] are granted as to Counts I through V, and summary judgment is entered in favor of defendants and against plaintiff Paramount Media Group, Inc. on those claims. The Court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims in Counts VI and VII and dismisses those claims without prejudice to plaintiff's ability to pursue them in state court. Plaintiff's motion to strike evidence presented in Image Media's reply [242] is denied. Plaintiff's motion to strike Bellwood's reply to Paramount's response to Bellwood's statement of facts [244] is granted. Civil case terminated.

**SO ORDERED.**                    **ENTERED:    February 14, 2017**


_____
**JORGE L. ALONSO**
**United States District Judge**

29